## ROBERTSON *v.* GERDAN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 56. Argued December 4, 1889. — Decided December 16, 1889.

Pieces of ivory for the keys of pianos and organs, matched to certain octaves, sold to manufacturers, who scrape them to make them adhere to wood, and then glue them to wood, were charged with duty as manufactures of ivory, under Schedule M of section 2504 of the Revised Statutes of 1874, 2d ed. p. 474, and under Schedule N of section 2502 of the Revised Statutes, as enacted by the act of March 3, 1883, 22 Stat. 511. The importer claimed that they were liable to a less duty, as musical instruments, under Schedule M of section 2504 of the Revised Statutes of 1874, 2d ed. p. 478, and under Schedule N of section 2502 of the Revised Statutes as enacted by said act of March 3, 1883, 22 Stat. 513. In a suit by him against the collector to recover the alleged excess of duty paid, the court charged the jury that if the articles were made on purpose to be used in pianos and organs, and were used exclusively in them, they were dutiable as musical instruments and not as manufactures of ivory; *Held*, that this was error; and that the articles, as imported, were manufactures of ivory.

THE case is stated in the opinion.

, *Mr. Assistant Attorney General Maury* for plaintiff in error.

*Mr. E. B. Smith* for defendant in error. *Mr. Stephen G. Clarke* filed a brief for the same.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action brought in the Superior Court of the city of New York, and removed by *certiorari* by the defendant into the Circuit Court of the United States for the Southern District of New York, by Otto Gerdan against William H. Robertson, collector of customs of the port of New York, to recover duties paid under protest on certain ivory pieces for the keys of pianos or organs, imported into the port of New York, and entered there, some of them in September and October, 1882, and the rest of them in January, October and November, 1884. Upon those imported in 1882, the collector assessed a duty of 35 per cent ad valorem under the provision of Schedule M of section 2504 of the Revised Statutes, 2d ed. p. 474, enacted June 22, 1874, which imposes that rate of duty on "Manufactures of bones, horn, ivory, or vegetable ivory." On the articles imported in 1884, the collector assessed a duty of 30 per cent ad valorem, under that provision of Schedule N of section 2502 of the Revised Statutes, as enacted by the act of March 3, 1883, 22 Stat. 511, which imposes that rate of duty on "bone, horn, ivory, or vegetable ivory, all manufactures of, not specially enumerated or provided for in this act."

The importer claimed in his protest that the goods imported in 1882 were subject to a duty of 30 per cent ad valorem, under that provision of Schedule M of section 2504 of the Revised Statutes of 1874, 2d ed. p. 478, which imposes that rate of duty on "Musical instruments of all kinds;" and that the goods imported in 1884 were liable to a duty of 25 per cent ad valorem, under that provision of Schedule N of section 2502 of the Revised Statutes, as enacted by the said act of March 3, 1883, 22 Stat. 513, which imposes that rate of duty on "Musical instruments of all kinds."

On appeal, the decision of the collector was affirmed by the Secretary of the Treasury, and suit was brought in due time.

The plaintiff had a verdict at the trial, and judgment was entered for him, for $345.50, to review which the defendant has brought a writ of error.

The bill of exceptions states as follows: "Plaintiff called

as his only witness George W. Clark, who, being duly sworn, testified that he was in the employ of plaintiff; that he identified the samples produced as similar to the articles which were imported; that they are pieces for the keys of pianos or organs; that they come in packages and are matched to certain octaves for certain instruments, to wit, organs and pianos, five octaves for organs and seven octaves for pianos, and are glued on the keys; that they are sawed and cut in a particular shape for that purpose, and are tapered in thickness, so that the end meets and the shaft comes in between. Q. They are used for no other purpose than for pianos and organ keys? A. That is it, sir. On cross-examination this witness testified that he had never put them on pianos or organs; that there are different grades and two sizes of the articles in question. Q. Do you know how they are put on the piano? A. We don't do that; we sell to the piano makers and key-board makers. I have seen it done. They scrape them to make them hold to the wood; then they are put on the key-board, and then sawed out and stuck on in that way on a large board, and then sawed out, and this, the ivory piece, is then glued on top of it, and then it is polished. Q. Are the corners rounded off? A. We don't do that; we sell to the makers. Q. As a matter of fact, don't you know that the outside corners are rounded off? A. I have seen it so, yes, sir; on the pianos. We are not piano makers; we sell to the piano and key-board makers." No other evidence was offered on either side.

The defendant asked the court to direct a verdict in his favor, because (1) the imported article was not a musical instrument, and (2) it was not a completed, indispensable part of a musical instrument. This motion was denied, and the defendant excepted. The defendant then asked the court to charge the jury that, in order to find for the plaintiff, they must find that the imported articles were completed, indispensable parts of a musical instrument. But the court charged that if the articles were used exclusively for pianos and organs, the jury should return a verdict for the plaintiff; if not, for the defendant; to which instruction the defendant excepted. The court also charged that if the articles were made on pur-

pose for pianos and organs, as musical instruments, and no other purpose, the jury might return a verdict for the plaintiff. To this instruction the defendant excepted.

We think there was error in the charge of the court. The substance of the charge was that, if the articles were made on purpose to be used in pianos and organs, and were used exclusively in pianos and organs, they were dutiable as musical instruments, and not as manufactures of ivory. That the articles were in themselves musical instruments, cannot be gravely contended. They were ivory pieces for the keys of pianos or organs. As imported, they were simply pieces of ivory, which had undergone a process of manufacture; were of a shape and size to be used for certain octaves of pianos and organs; and were sold to piano makers and key-board makers. Those persons scraped the lower surface of the ivory, to make it adhere to a piece of wood to which it was afterwards glued. In the shape in which the articles were imported, they were clearly manufactures of ivory.

Neither of the statutes in question imposes on parts of musical instruments the same rate of duty which it imposes on musical instruments.

By Schedule E of section 11 of the act of July 30, 1846, 9 Stat. 47, a duty of 20 per cent ad valorem was imposed on "musical instruments of all kinds, and strings for musical instruments of whip-gut or catgut, and all other strings of the same material;" and, by the same act (p. 45) a duty of 30 per cent ad valorem was imposed on "manufactures of bone, shell, horn, pearl, ivory, or vegetable ivory."

By section 20 of the act of March 2, 1861, 12 Stat. 190, a duty of 20 per cent ad valorem was imposed on "Musical instruments of all kinds, and strings for musical instruments of whip-gut, or catgut, and all other strings of the same material;" and by section 22 of the same act (p. 192) a duty of 30 per cent ad valorem was imposed on "Manufactures of bone, shell, horn, ivory, or vegetable ivory."

By section 6 of the act of July 14, 1862, 12 Stat. 550, a duty of 10 per cent ad valorem, in addition to then existing duties, was imposed on "Musical instruments of all kinds, and

strings for musical instruments of whip-gut or catgut, and all other strings of the same material;" and by section 13 of the same act (p. 557) a duty of 5 per cent ad valorem, in addition to then existing duties, was imposed on "Manufactures of bone, shell, horn, ivory or vegetable ivory."

By Schedule M of section 2504 of the Revised Statutes of 1874, 2d ed. p. 481, a duty of 30 per cent ad valorem was imposed on "Strings: all strings of whip-gut or catgut, other than strings for musical instruments;" and by section 2505 of said Revised Statutes, 2d ed. p. 484, "Catgut strings, or gut-cord, for musical instruments" were made free of duty.

By section 2502 of the Revised Statutes, as enacted by the act of March 3, 1883, 22 Stat. 514, a duty of 25 per cent ad valorem was imposed on "Strings: all strings of catgut, or any other like material, other than strings for musical instruments;" and, by section 2503 of the same enactment, 22 Stat. 518, "Catgut strings, or gut-cord, for musical instruments," were made free of duty.

It is thus seen that, by the act of 1846, by the act of 1861 and by the act of 1862, provision was made for imposing a duty on parts of stringed musical instruments, by laying a duty on "strings for musical instruments of whip-gut or catgut," leaving other parts of musical instruments, imported in parts, to be dutiable under other provisions of law. So, in the Revised Statutes of 1874, and as enacted in 1883, while there is no specific duty on parts of musical instruments, as such parts, "catgut strings or gut-cord, for musical instruments," are made free of duty, leaving other parts of musical instruments to be dutiable under other provisions than that applicable to "musical instruments of all kinds."

This view of the legislation of Congress is fortified by the fact that in the Revised Statutes of 1874, and in the same as enacted in 1883, a duty is imposed on carriages and parts of carriages; on chronometers and parts of chronometers; on clocks and parts of clocks; and on watches and parts of watches. If Congress had intended, in either enactment of the Revised Statutes, to impose the same duty on parts of musical instruments which it imposed on musical instruments, it

would have been easy to impose that duty on " musical instruments of all kinds, and parts of the same."

It is very clear to us that the fact that the articles in question were to be used exclusively for a musical instrument, and were made on purpose for such an instrument, does not make them dutiable as musical instruments.

The contention of the plaintiff is thought to be supported by the fact that, in the case of *Foote* v. *Arthur*, tried in the Circuit Court for the Southern District of New York early in the year 1880, and unreported, it was held that a completed violinbow was a musical instrument, and subject to duty as such under the statute, and by the fact that the Treasury Department acquiesced in that decision, under the advice of the Attorney General of the United States. It is sufficient to say that the pieces of ivory in question were not violin-bows ; and that, whatever the true view may be as to violin-bows the same considerations applicable to them do not apply to the articles in question here.

Attention is called by the plaintiff to the fact that the provision in the Revised Statutes, as enacted in 1883, in regard to manufactures of ivory, imposes the duty of 30 per cent ad valorem on all manufactures of ivory " not specially enumerated or provided for in this act." But those words have no bearing on the present case, because the pieces of ivory in question are not specially enumerated or provided for in the act of 1883.

*The judgment is reversed, and the case remanded to the Circuit Court with a direction to grant a new trial.*