## UNITED STATES *v.* SCHOVERLING.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 690. Argued October 25, 1892. — Decided November 7, 1892.

In the latter part of October, 1890, the firm of S., D. & G. imported from Europe articles described in the entry as " finished gunstocks with locks and mountings," unaccompanied by barrels for the guns. The collector levied duty on them as guns, under paragraph 170, in Schedule C of the act of October 1, 1890, c. 1244, (26 Stat. 579.) The importers protested that they were dutiable as manufactures of iron, under paragraph 215 of Schedule C of the act. The general appraisers affirmed the decision of the collector. It did not appear that the gunstocks had formed part of completed guns in Europe, and the question of the importation of the barrels was not involved, although it appeared that the gun-stocks were intended to be put with barrels otherwise ordered, to form complete guns. The Circuit Court, on appeal by the importers, reversed the decision. On appeal to this court, by the United States; *Held* that the decision of the Circuit Court was correct.

The provision of § 2 of the act of January 29, 1795, (1 Stat. 411,) was not still in force.

The appeal to this court was prosecuted as against the firm, but a motion was granted to cure that defect by amendment.

THE case is stated in the opinion.

*Mr. Solicitor General* for appellant.

.*Mr. Albert Comstock* for appellees.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

On the 20th of October, 1890, the firm of Schoverling, Daly & Gales, composed of August Schoverling, Charles Daly and Joseph Gales, imported into the port of New York, from Europe, articles described in the entry as "12 finished gunstocks, with locks and mountings." The collector assessed a duty upon them of $1.50 each, and in addition thereto, 35 per cent ad valorem, under paragraph 170 of the act of October 1, 1890, c. 1244, (26 Stat. 579,) in Schedule C of that act, entitled "Metals and Manufactures of Fire-arms:" "170. All double-barreled, sporting, breech-loading shotguns, valued at not more than six dollars each, one dollar and fifty cents each; valued at more than six dollars and not more than twelve dollars each, four dollars each; valued at more than twelve dollars each, six dollars each; and in addition thereto, on all the above, thirty-five per centum ad valorem. Single-barrel breech-loading shotguns, one dollar each and thirty-five per centum ad valorem. Revolving pistols valued at not more than one dollar and fifty cents each, forty cents each; valued at more than one dollar and fifty cents, one dollar each; and in addition thereto, on all the above pistols, thirty-five per centum ad valorem." The importers, on November 15, 1890, filed with the collector, under § 14 of the act of June 10, 1890, c. 407, (26 Stat. 137,) a notice in writing, addressed to him, objecting to the decision of the collector, and stating their reasons for so doing. That notice in writing, called a "protest," claimed that the articles were only parts of guns, and were dutiable at 45 per cent ad valorem, under paragraph 215 of Schedule C of the act of October 1, 1890, (p. 582,) which reads as follows: "215. Manufactures, articles or wares not specially enumerated or provided for in this act, composed wholly or in part of iron, steel, lead, copper, nickel, pewter, zinc, gold, silver, platinum, aluminum, or any other metal, and whether partly or wholly manufactured, forty-five per centum ad valorem." The protest stated that the articles in

question were simply parts or accompaniments intended for use in the manufacture of guns or muskets, were not guns or muskets, and could not be classed as such completed commodities.

Under § 14 of the act of June 10, 1890, the collector, on the 16th of December, 1890, transmitted to the three general appraisers on duty at the port of New York the invoice, entry, and protest. The assistant appraiser had reported to the appraiser, November 28, 1890, that the articles in question were "gunstocks, with mountings complete, ready for attachment to the barrels, which arrived by another shipment," and that "the gunstocks and barrels, when attached, make double-barreled breech-loading shotguns, complete." The collector, in his communication to the general appraisers, referred to the foregoing report of the assistant appraiser, and stated that the merchandise was returned by the appraiser upon the invoice as "breech-loading shotguns," invoiced at a value not over $6 each, and that he had assessed duty on them, under paragraph 170, at the rate of 35 per cent ad valorem and $1.50 each.

The board of general appraisers took the testimony of Mr. Daly, one of the importing firm, on December 19, 1890, and it is set forth in the margin.[1] In its report to the collector,

---

[1] Protest in the matter of importation of certain gunstocks by Messrs. Schoverling, Daly & Gales. Statement of Mr. Daly. Examined by Gen. App. SOMERVILLE: Q. You are a member of the firm of Schoverling, Daly & Gales? A. Yes, sir. Q. Where are you doing business? A. In New York. Q. This importation, as I understand you, consists of this item marked 225 here, finished gunstocks, with locks and mountings? A. That is it. Q. Shotguns? A. They are parts of shotguns; parts of breech-loading shotguns. Q. When did you make this order for this importation? A. I telegraphed for it a short time before this invoice. Q. How many of these are there here? A. Twelve of these finished gunstocks. Q. Did you at the same time order the other parts of these guns to be sent? A. I did not. That is all we received. We never received the barrels. Q. You made no order for the barrels? A. No, sir. (Reference made in the special report of the appraiser to protests of Schoverling, Daly & Gales against the assessment of duty at the rate of 35 per cent, etc.) Q. What we want to know is whether the barrels of these guns have arrived by another shipment, within your knowledge? A. As a member of the firm of Schoverling, Daly & Gales, I do not know it, because we have never received any invoice. Q. Never made any order? A. No, sir. Q. Have you any agreement with

signed by all three of its members, it is said that if the importation was simply one of gunstocks, without the gun-barrels required to make a complete fire-arm, and the case rested there, the articles could not be regarded as completed guns, so as to be dutiable under paragraph 170; that the testimony of Daly disclosed the facts that the firm of Schoverling, Daly & Gales had imported the gunstocks in question, and had made an agreement with another firm by which the latter were to order the barrels, with the mutual expectation that the stocks and barrels, after arriving at New York, were to be put together so as to make complete guns; that Schoverling was a member of both firms thus colluding together; that such a mode of evading the payment of duties could not be tolerated; and that the decision of the collector was affirmed.

On the 6th of January, 1891, the importers, under § 15 of the act of June 10, 1890, applied to the Circuit Court of the United States for the Southern District of New York, for a review of the questions of law and fact involved in such decision of the board of general appraisers, by filing in the office of the clerk of said court a statement of the errors of law and fact complained of, which were that the duty had been assessed on the articles at $1.50 each and 35 per cent ad valorem, while it should have been assessed under paragraph 215 at 45 per cent ad valorem, only. On the filing of the application, the Circuit Court made an order that the board of general appraisers return to the court the record and the evidence, with a certified statement of the facts involved and their decision thereon.

---

any other firm that they were to order the barrels of these guns? A. Yes; we have. Q. With the expectation on your part that they were to be put together here? A. Yes, sir. Q. Have those other importations been received by the other firms? A. A good many of them, I guess, are in bond. Q. What firms did you have an understanding of this nature with? A. With A. Schoverling. Q. Is he a partner in your house? A. Yes, sir; he is a partner in the firm of Schoverling, Daly & Gales, and also runs a separate business. Mr. TICHENOR: Q. Do you think the trade generally adopted this plan? A. I think they all have received goods in the same way. We have imported those stocks with the intention of putting them with the other parts imported by these other parties.

On the 22d of January, 1891, the board of general appraisers filed in the court their return, embodying the protest of November 15, 1890, the assistant appraiser's report of November 28, 1890, the collector's communication of December 16, 1890, the testimony of Daly, and the opinion and decision of the board. The case was argued before the Circuit Court, held by Judge Lacombe, which entered an order, on March 20, 1891, reversing and setting aside the decision of the collector and that of the board of general appraisers, and adjudging that the merchandise should have been classified and assessed with duty at the rate of 45 per cent ad valorem, under paragraph 215 of the act, as "manufactures, articles, or wares, not specially enumerated or provided for in this act, composed . . . in part of iron or steel." The opinion of the Circuit Court is reported in 45 Fed. Rep. 349. It stated that there was no evidence that the articles were ever assembled or brought together with the gun-barrels on the other side; that there was no finding to that effect by the appraisers; that if there were such a finding of fact, the court would be constrained to reverse it, because there was no evidence in the record to support it; that, for all that appeared, the gunstocks might have been bought from one manufacturer and the gun-barrels from another; that the tariff act laid a duty upon "sporting, breech-loading shotguns," and laid a separate and different duty upon the parts of which such shotguns were composed, as manufactures in whole or in part of metal; that it could be fairly assumed that Congress, by that terminology, meant to allow importers who chose to do so, to bring in fragments of a combination article by different shipments, and then to employ domestic labor in putting them together; that it might have been intended to induce importers to employ to that extent the labor of this country, instead of having the article combined abroad; that, under the language of the statute, there was nothing in the shipment in question except gunstocks mounted, articles which were properly described in the act only by the phrase "manufactures composed wholly or in part of metal;" and that, therefore, they should pay that duty and no other.

On March 20, 1891, the Attorney General of the United States, under § 15, of the act of June 10, 1890, applied to the Circuit Court for the allowance of an appeal to this court from the decision and judgment of the Circuit Court. On the same day, the application was granted, the appeal was allowed, and it has here been heard.

We are of opinion that the judgment of the Circuit Court must be affirmed. The contention on the part of the United States is that the transaction, as conducted, was a fraud upon the statute. But the question was solely as to the gunstocks. *Sampson* v. *Peaslee,* 20 How. 571. There is not in the statute, in paragraph 170, or elsewhere, any imposition of duty on parts of breech-loading shotguns, except the provision in paragraph 215. There is no duty otherwise imposed on materials for such guns.

In the act of October 1, 1890, in paragraph 154, a duty is imposed on "axles, or parts thereof;" in paragraph 165, on "penknives or pocketknives of all kinds, or parts thereof;" in paragraph 185, on "wheels, or parts thereof," and "tires, or parts thereof;" and in paragraph 210, on chronometers "and parts thereof."

In the present case, the intent of the importers to put the gunstocks with barrels separately imported, so as to make here completed guns for sale, cannot affect the rate of duty on the gunstocks as a separate importation. *Merritt* v. *Welsh,* 104 U. S. 694.

In *Robertson* v. *Gerdan,* 132 U. S. 454, the statute had imposed a duty on musical instruments, and had not imposed the same duty on parts of musical instruments; and it was held that pieces of ivory for the keys of pianos or organs, to be used exclusively for such musical instruments, and made on purpose for such instruments, were not dutiable as musical instruments, but were liable to a less duty, as manufactures of ivory.

We do not think the decision in *Falk* v. *Robertson,* 137 U. S. 225, applies to the present case. It nowhere appears that these gunstocks had formed part of completed guns in Europe, nor was the question of the importation of the barrels

for the guns involved. In the present case, the dutiable classifi-
cation of the gunstocks imported must be ascertained by an
examination of them in the condition in which they are im-
ported. *Worthington* v. *Robbins*, 139 U. S. 337.

Reference is made by the counsel for the United States to
the provision of § 2 of the act of January 29, 1795, (1 Stat.
411,) which reads as follows: "Where any article is, by any
law of the United States, made subject to the payment of
duties, the parts thereof, when imported separately, shall be
subject to the payment of the same rate of duties," as not
having been repealed. In 1 Stat. 411, opposite the act is the
word "[Obsolete.]" That provision is not embodied in the
Revised Statutes, and we think it was limited to the case of
duties then imposed by law, and did not apply to duties im-
posed by subsequent tariff acts. Tariff acts passed subse-
quently to the act of 1795 have provided that the duties there-
tofore imposed by law on imported merchandise should
cease and determine. If the provision of the act of 1795 had
been still in force when the tariff act of 1890 was enacted, it
would have been wholly unnecessary in the latter act to im-
pose a duty on parts of articles, as well as on the articles
themselves, in cases where it was deemed proper to impose
such duty upon parts.

This appeal was prosecuted as against the firm, but this
defect may be cured by amendment, and the motion to that
effect is granted. *Estis* v. *Trabue*, 128 U. S. 225.

*Judgment affirmed.*