## In re SMITH, Surveyor.

## In re RHEINSTROM et al.

(Circuit Court, S. D. Ohio, W. D. March 31, 1894.)

### No. 4,555.

CUSTOMS DUTIES—CONCENTRATED CHERRY JUICE.

Cherry juice so concentrated that five gallons, in its natural condition, are reduced to one gallon, the entire amount of acidity and coloring matter being retained, and the bulk of the water eliminated, is dutiable as cherry juice, under paragraph 339 of the tariff act of 1890, and not as an alcoholic compound, under paragraph 8.

At Law. Appeal by Amor Smith, Jr., surveyor, etc., from a decision of the board of general appraisers in favor of Rheinstrom Bros.

John W. Herron, U. S. Atty., and Henry Hooper, Asst. Atty.
Jacob Shroder, for Rheinstrom Bros.

SAGE, District Judge. Rheinstrom Bros. imported what they claimed to be cherry juice, subject, under paragraph 339 of the tariff act of October 1, 1890 (Supp. Rev. St. U. S. [2d Ed.] p. 835), to a duty of 60 cents per gallon, it containing not more than 18 per centum alcohol. The appraiser at Cincinnati liquidated the imported article as an alcoholic compound, under Schedule A, par. 8, Supp. Rev. St. U. S. p. 813, dutiable at $2 per gallon and 25 per centum ad valorem. The board of general appraisers reversed his action, and liquidated the importation as cherry juice, under Schedule A, par. 339, or as under section 5 of the act (p. 857 of the Supplement), which provides that each and every imported article not enumerated in the act, but similar either in material, quality, texture, or the use to which it may be applied, to any article enumerated in the act as chargeable with duty, shall pay the rate of duty levied on the enumerated article which it most resembles in any of the particulars above mentioned.

From the testimony it appears that the cherry juice in question is so concentrated that five gallons, in its natural condition, are reduced to one gallon; the entire amount of acidity and coloring matter being retained and concentrated, and the bulk of the water eliminated. It is claimed for the surveyor that the resulting fluid is not the cherry juice described in the act known to the trade to-day. So far as appears, Rheinstrom Bros. are the only importers of it; and, according to the testimony of one of the firm, it was made at his suggestion. It is insisted that "extracts," as the term is employed in the pharmacopoeias, result from the evaporation of the solution of vegetable principles, obtained either by exposing a dried drug to the action of a solvent, or by expressing the juice

from a fresh plant. U. S. Dispensatory (16th Ed.) p. 586. But this claim omits the qualification that the extracts described are declared in the text to be solid preparations, being reduced to at least a pilular consistence. On pages 587 and 588 of the same work, under the head of "Extraction of the Soluble Principles by Expression," the author refers to a greenish precipitate formed by heating the juice of the plant to about 160° Fahr. He says that this precipitate may be incorporated in the juice when that is reduced by evaporation to the consistence of syrup, and that in this way the juice of belladonna has been kept more than 10 years, and at the end of that time found to yield an extract equal to that obtained from the fresh juice. Under the head of "Extract of Aconite," there is an account of the process for inspissated juices. These references make it clear that concentrated juices are not regarded as extracts. Moreover, it is expressly stated on page 594 that extracts are prepared in two different degrees of consistence; soft, so that they may be readily made into pills, and hard, that they may be pulverized. If we turn over to page 596, where fluid extracts are treated of, we find that they are made by the use of the powdered drug or extract, and never by condensation of the juice of the plant or fruit. The general formula is described at page 597. The required number of grammes of the powdered drug or extract is moistened with a certain quantity of menstruum or solvent, and enough menstruum added to saturate the powder, and leave a stratum above it. The lower orifice of the percolator is closed when the liquid begins to drop, and the percolator is closely covered to prevent evaporation and permit maceration for a specified time; additional menstruum is poured on, and percolation continued until the drug is exhausted. Reference to the formulas for the different fluid extracts described in this book shows that, without exception, they are prepared from the powdered extract. The same is true of the fluid extracts, the formulas for which are given in the Pharmacopoeia of the United States of 1890, including formulas for fruit extracts and for extract of wild cherry. The formula for fluid extract of wild cherry is 1,000 grammes of No. 20 powder, 100 cubic centimeters of glycerin, and of alcohol and water a sufficient quantity. Taking, therefore, the authorities cited for the surveyor, they establish conclusively the proposition exactly opposite to that claimed, and make it clear that the imported article, in this instance, is not an extract, but is nothing more than concentrated cherry juice. There is not a formula given in either of the books referred to in which a fruit extract is prepared from the juice of the plant or fruit. In every instance it is prepared from the solid powder or extract.

The objection that the importers, by the condensation of the cherry juice, succeed in escaping four-fifths of the duty, is immaterial. They accomplish this without evading or violating any provision of the tariff act. That act does not prescribe what shall be the strength of cherry juice. If Rheinstrom Bros., by importing condensed and concentrated juice, could avoid the payment of duty, they had a perfect right to do so. The authorities estab-

lish this proposition beyond question. Hartranft v. Wiegmann, 121 U. S. 616, 7 Sup. Ct. 1240; Seeberger v. Farwell, 139 U. S. 611, 11 Sup. Ct. 650; Magone v. Luckemeyer, 139 U. S. 612, 11 Sup. Ct. 651; U. S. v. Schoverling, 146 U. S. 81, 13 Sup. Ct. 24; Merritt v. Welsh, 104 U. S. 694. Even if the avoidance of the payment of duty were the only reason for ordering the concentrated juice, it would not affect the case. But it is apparent upon a moment's consideration that, by concentrating at the rate of five gallons into one, they save four-fifths of the expense of casks or barrels, and four-fifths of the freight or cost of carriage. The presumption that the condensation was simply and only to avoid the payment of duty is not warranted. The only remedy for it is by so amending the tariff as to ratably increase the duty on the condensed article. The decision of the general appraisers is approved, and will be confirmed.