### STONE & DOWNER CO. v. UNITED STATES.

(Circuit Court, D. Massachusetts. July 10, 1906.)

No. 44 (1,598)

1. CUSTOMS DUTIES—MIXED WOOLS—"CHANGE IN CONDITION."

Construing Tariff Act July 24, 1897, c. 11, § 1, Schedule K, par. 356. 30 Stat. 183 [U. S. Comp. St. 1901, p. 1665], providing an increased duty on wool "changed in its character or condition for the purpose of evading the duty," *held*, that it is not necessary that there should be any mechanical or chemical change, disguising the quality or character of the wool; and that, where white and black Iceland wools, which had always been dealt in and imported separately in different bales, were imported mixed together in the same bale for the purpose of securing a lower rate of duty on the white wool, the wool had been changed in condition within the meaning of the law.

2. SAME—DOUBLE DUTY.

Where two kinds of wools are changed in condition by mixing them in the same bale, in order to make the mixture subject to the lower duty provided for the poorer kind, *held* (1) that, within the meaning of Tariff Act July 24, 1897, c. 11, § 1, Schedule K, par. 356, 30 Stat. 183 [U. S. Comp. St. 1901, p. 1665], only the better kind is changed "for the purpose of evading the duty to which it would otherwise be subject," because the poorer kind would be subject to the same rate, whether mixed or not; (2) that, therefore, the further provision in the same paragraph that wool changed for such purpose shall pay "twice the duty to which it would otherwise be subject," would apply only to the better kind, and not the poorer; and (3) that the duty which is thus doubled is that which would have been applicable to the better kind if imported in its natural condition.

3. SAME—AVERAGE AGGREGATE VALUE.

Section 2912, Rev. St. [U. S. Comp. St. 1901, p. 1926], providing that the rate of duty on wool of different qualities imported in the same package shall be determined according to the average aggregate value of the contents of the package, applies where it does not appear that the wool was mixed for the purpose of obtaining a lower rate of duty. If such

purpose is shown, the case is brought within the provisions of Tariff Act July 24, 1897, c. 11, § 1, Schedule K, par. 356, 30 Stat. 183 [U. S. Comp. St. 1901, p. 1665].

4. SAME—CHANGE TO MEET TARIFF CONDITIONS—GOOD FAITH.

Importers may adjust themselves to the tariff laws as framed by Congress, and in the absence of any deception have the right to obtain the lowest classification of their goods.

On Application for Review of a Decision of the Board of United States General Appraisers.

For decision below, see G. A. 5,629, T. D. 25,168.

Searle & Pillsbury (Charles P. Searle, of counsel), for importers.

Asa P. French, U. S. Atty., and William H. Garland, Asst. U. S. Atty.

COLT, Circuit Judge. The merchandise in this case consisted of one bale of Iceland wool, entered at the port of Boston, May 4, 1903. The bale contained 40 pounds of white Iceland wool, and 40 pounds of gray or black Iceland wool mixed together.

The wool was classified as third-class wool, and the 40 pounds of white wool were valued at 6½ pence, or over 12 cents, per pound, and the 40 pounds of black wool at 5 pence, or less than 12 cents, per pound, making the aggregate value of the contents of the bale 5¾ pence per pound, or less than 12 cents per pound. The collector assessed a double duty of 8 cents per pound upon the white wool, and a duty of 4 cents per pound upon the black wool. The Board of General Appraisers held that the entire contents of the bale was subject to a double duty of 8 cents per pound. The importers claim that no portion of the wool is subject to a double duty, and that the proper duty is 4 cents per pound.

The evidence shows that in trade and commerce white Iceland wool and black Iceland wool are never mixed together, but are sold in separate bales, and that they have been hitherto imported into this country in separate bales; and, further, that the importers purposely mixed this wool in order to test their right to do so under section 2912 of the Revised Statutes [U. S. Comp. St. 1901, p. 1926].

The question of the proper duty upon this wool involves the consideration of paragraphs 356, 358, 359, Tariff Act July 24, 1897, c. 11, § 1, Schedule K, 30 Stat. 183 [U. S. Comp. St. 1901, pp. 1665, 1666], and section 2912 of the Revised Statutes:

Paragraph 356: "The duty upon wool of the sheep * * * which shall be changed in its character or condition for the purpose of evading the duty * * * shall be twice the duty to which it would be otherwise subject."

Paragraph 358: "On wools of the third class * * * the value whereof shall be twelve cents or less per pound, the duty shall be four cents per pound."

Paragraph 359: "On wools of the third class * * * the value whereof shall exceed twelve cents per pound, the duty shall be seven cents per pound."

Section 2912: "When wool of different qualities is imported in the same bale, bag, or package, it shall be appraised by the appraiser, to determine the rate of duty to which it shall be subjected, at the average aggregate value of the contents of the bale, bag, or package."

If this wool had been imported in separate bales, the white wool would have been classified under paragraph 359, since its value ex-

ceeds 12 cents per pound, thereby making the rate of duty 7 cents per pound; and the black wool would have been classified under paragraph 358, since its value is less than 12 cents per pound, thereby making the rate of duty 4 cents per pound. If, however, as contended by the importers, the proper classification of this wool is under section 2912, as "wool of different qualities imported in the same bale," then, since "the average aggregate value of the contents of the bale" is less than 12 cents per pound, the entire contents of the bale is only subject to a duty of 4 cents per pound under paragraph 358. As to the white wool, the difference in the duty between these two classifications is 3 cents per pound, or the difference between 7 cents per pound and 4 cents per pound; while as to the black wool there is no difference in the duty, since this wool, under both classifications, is subject to the lowest rate of duty, namely, 4 cents per pound.

If it were not for paragraph 356 this wool would be properly classified under section 2912 and paragraph 358, as contended by the petitioners, although it had been mixed together for the purpose of obtaining a lower rate of duty on the white wool, because importers may adjust themselves to the tariff laws as framed by Congress, and, in the absence of any deception, they have the right to obtain the lowest classification for their goods. Magone v. Luckemeyer, 139 U. S. 612, 11 Sup. Ct. 651, 35 L. Ed. 298; Seeberger v. Farwell, 139 U. S. 608, 11 Sup. Ct. 650, 35 L. Ed. 297; Merritt v. Welsh, 104 U. S. 694, 707, 26 L. Ed. 896; United States v. Schoverling, 146 U. S. 76, 13 Sup. Ct. 24, 36 L. Ed. 893; Robertson v. Gerdan, 132 U. S. 454, 10 Sup. Ct. 119, 33 L. Ed. 403.

The question in this case, therefore, resolves itself into the inquiry whether, in view of paragraph 356, importers can mix together in one bale two different qualities of wool, which are always bought and sold separately, or in an unmixed condition, in the markets of the world, for the purpose of obtaining a lower classification on the wool of superior quality, and hence a lower rate of duty. In other words, does paragraph 356 apply to this wool upon the state of facts here presented, and, if it does apply, what is the proper classification of this wool, and the rate of duty to which it is subject?

Paragraph 356 provides that when wool is "changed in its character or condition for the purpose of evading the duty" it shall pay twice the duty "to which it would be otherwise subject." That the "condition" of this wool has been "changed" within the meaning and intent of this provision seems free from doubt. White Iceland wool and black Iceland wool mixed together are not in the same condition, either actually or commercially, as when each is in a separate state. The fact that they may be afterwards restored to their original condition does not make them any the less in a changed condition while they are in a mixed state. Changed condition does not mean that the wool must have been colored or dyed, or subjected to some mechanical or chemical change in order to disguise its quality or character. These words are used in a general sense, and, when read in connection with what follows in this paragraph, were plainly intended to cover any alteration in the state or condition of the wool which

is made for the purpose of having it classified under a different paragraph of the tariff act, and thereby obtaining a lower rate of duty. It is clear, therefore, that the white wool comes within the terms of paragraph 356, since it was changed in 'its condition for the purpose of evading the duty to which it "would be otherwise subject;" that is, it was changed in its condition by mixing black wool with it for the purpose of having it classified under section 2912 and paragraph 358, whereby it would only be subject to a duty of 4 cents per pound, instead of having it classified under paragraph 359, in which case it would be subject to a duty of 7 cents per pound.

With respect to the black wool, however, it does not come within the terms of paragraph 356, because, although it was changed in its condition by mixing white wool with it, it was not so changed "for the purpose of evading the duty to which it would be otherwise subject," since it is subject to the same duty of 4 cents per pound whether it is classified in its mixed condition under section 2912 and paragraph 358, or in its separate condition under paragraph 358.

Holding that the white wool comes within the provisions of paragraph 356, and is, therefore, subject to double duty, the question remains, how shall this wool be classified, and what is the rate of duty to which it is subject? Is it to be classified under section 2912 and paragraph 358, and subjected to a duty of 4 cents per pound, and then to a double duty of 8 cents per pound under paragraph 356; or is it to be classified under paragraph 359, and subjected to a duty of 7 cents per pound, and then to a double duty of 14 cents per pound under paragraph 356? It may here be observed, as already noted, that the collector assessed a double duty of 8 cents a pound on the white wool, and that the Board of General Appraisers held that the entire contents of the bale was subject to a double duty of 8 cents a pound.

The proper classification and duty upon this white wool seem clear upon reading paragraph 356. The language is: "The duty upon wool * * * shall be twice the duty to which it would be otherwise subject." This means that the wool is to be classified as if it had not been changed in condition, and then pay double duty under this classification; in no other way can the wool be made to pay "twice the duty to which it would be otherwise subject."

In other words, the white wool, having been changed in condition for the purpose of evading the duty to which it would be otherwise subject, it is taken out from section 2912, and is to be classified as if it were imported in its original condition, namely, under paragraph 359, and then made to pay a double duty of 14 cents per pound under paragraph 356.

This result does not lead to any conflict or inconsistency between section 2912 and paragraph 356. Section 2912 applies to imports of different qualities of wool in the same bale in which it does not appear that the wool was mixed for the purpose of obtaining a lower rate of duty. For example, if white and black Iceland wool in a mixed condition were regularly bought and sold as an article of commerce in the markets of the world, then this bale would be properly classified under section 2912, since it could not then be said that it

was mixed by the importers for the purpose of obtaining a lower rate of duty. It is only where this purpose is shown, as in the present case, that the wool cannot be classified under section 2912.

This construction of paragraph 356 is in accord with the decision of the Supreme Court in Patton v. United States, 159 U. S. 560, 16 Sup. Ct. 89, 40 L. Ed. 233, where the merchandise was "wool tops" which had been broken into small pieces for the purpose of having them classified as "wool waste" and thus evading the higher rate of duty.

The merchandise was entered as "wool waste," under Schedule K of the Tariff Act of March 3, 1883, 22 Stat. 508, c. 121, and a duty of 10 cents per pound was assessed and paid. Subsequently, under other paragraphs of the tariff act of 1883, the collector imposed a duty of 30 cents per pound, and then doubled this duty upon the ground that the wool had been changed in its character or condition for the purpose of evading the duty. This made the aggregate duty 60 cents per pound. The United States brought suit to recover the difference between the amount paid upon the entry and the duty subsequently imposed by the collector. Upon trial before a jury, the court, among other things, charged that the importation in question could not be considered as wool waste, as it did not consist of refuse or broken particles thrown off in the process of manufacture, and was made intentionally by tearing up what are called "wool tops." The jury found a general verdict for the United States, and judgment was entered accordingly. Upon writ of error this judgment was affirmed, first by the Circuit Court, and then by the Supreme Court. In its opinion the Supreme Court said:

"Although it was submitted as a separate question to the jury, the testimony was practically undisputed, that the articles in question were merchantable tops broken up for the purpose of changing their character or condition from that of tops to that of waste, and that it was done for the purpose of evading the duty to which the wool in the form of tops would be subject on importation, or, at least, to which the importer believed it would be liable. If such change were made, and made for this purpose, it would make no difference whether the article thus produced was known commercially as waste or not. Assuming that the product would be waste, it would be waste produced by a process which Congress had refused to recognize, and the fact that the classification of the article was thereby changed would not relieve it from the double duty which Congress had imposed upon wool whose character or condition had been changed." 159 U. S. 506, 507, 16 Sup. Ct. 89, 91 (40 L. Ed. 233).

In Patton v. United States, as in the case at bar, the importers relied upon Merritt v. Welsh, 104 U. S. 694, 26 L. Ed. 896, and Seeberger v. Farwell, 139 U. S. 608, 11 Sup. Ct. 650, 35 L. Ed. 297. In distinguishing those cases, the Supreme Court said:

"In those cases, however, there was no such provision applicable to sugars or to woollen cloths as exists in this case, providing that where wool unmanufactured shall be changed in its character or condition for the purpose of evading duty a double duty shall be imposed. The object of this legislation seems to have been to make that unlawful with respect to raw wools which had been held to be legitimate with respect to other articles." 159 U. S. 508, 16 Sup. Ct. 92 (40 L. Ed. 233).

The decision of the Board of General Appraisers, overruling the petitioners' protest, is affirmed.