BENRUS WATCH CO., AND POMERANCE CO. (INC.) *v.* UNITED STATES (No. 3610)[1]

United States Court of Customs and Patent Appeals, May 29, 1933

*Nathan R. Margold* for appellants.

*Charles D. Lawrence*, Assistant Attorney General (*Daniel P. McDonald* and *Ralph Folks*, special attorneys, of counsel), for the United States.

[1] T. D. 46467.

[Oral argument April 3, 1933, by Mr. Folks; submitted on brief by appellants]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

At various times during the years 1928 and 1929, the appellants imported shipments of incomplete watch movements from Switzerland. The various parts of the movements were separately invoiced, but each invoice gave a single invoice value for the various parts of the movements contained in that shipment.

The collector in each case classified the same for duty as 15 jewel watch movements, at $2 each, under the appropriate provision of paragraph 367 of the Tariff Act of 1922.

The importers protested, claiming the goods to be dutiable as parts of watches, at 45 per centum ad valorem under said paragraph, or, alternatively, as jewels, at 10 per centum ad valorem under the same paragraph, or at 3 cents per dial and 45 per centum ad valorem under the same paragraph. The two latter claims are not pressed here.

The trial court overruled the protests. In so doing, speaking in a well-considered opinion through Dallinger, Judge, the court held that the watch movements imported were incomplete, and hence were not dutiable as watch movements under said paragraph 367. The court also held that they were not dutiable as parts of watches, relying upon *United States* v. *Hengerer Co.*, 15 Ct. Cust. Appls. 390, T. D. 42568. The court further held, on the authority of the case last cited, that the goods were dutiable under the provisions of paragraph 368 of said act, under the language—

any device or mechanism having an essential operating feature intended for measuring time * * *, any of the foregoing * * * partly complete * * *.

The trial court, having determined that the goods were so properly classifiable, overruled the protest upon the ground that the protestants had not made the proper claim, and that the collector's classification must therefore stand. From that judgment the importers have appealed, contending here, as they contended in the court below, that the imported articles are dutiable as parts of watches, under said paragraph 367.

It appears from the testimony that certain of the imported goods, when purchased, were complete watch movements. The importers then caused the balance wheels and main springs to be removed from these movements. These are referred to in the evidence, and stipulated to be as represented by Exhibits A and B. As to another class of the imported articles, illustrated by Exhibit C, the ratchet wheels and ratchet-wheel screws were not parts of the movements which were purchased, but were purchased separately, the intention being to insert

them into these watch movements after importation. It is stated by the importers, and does not seem to be controverted, that the class of articles covered by Exhibits A and B are those referred to in protest 361615–G, and that the second class of goods is covered by all the remaining protests.

It is stated by the court below, in its findings of fact, and not controverted by either of the parties, that—

The named missing parts were imported as separate entities in a different steamer from that containing the incomplete movements.

The essential portions of paragraph 367 and 368 are as follows:

PAR. 367. Watch movements, whether imported in cases or otherwise, assembled or knocked down, * * * having more than eleven and not more than fifteen jewels, $2 each; * * * watchcases and parts of watches, chronometers, box or ship, and parts thereof, 45 per centum ad valorem; all jewels for use in the manufacture of watches, clocks, meters, or compasses, 10 per centum ad valorem; enameled dials for watches or other instruments, 3 cents per dial and 45 per centum ad valorem: * * *

PAR. 368. Clocks and clock movements, including lever clock movements, and clockwork mechanisms, cased or uncased, whether imported complete or in parts, and any device or mechanism having an essential operating feature intended for measuring time, distance, or fares, or the flowage of water, gas, electricity, or similar uses, or for regulating or controlling the speed of arbors, drums, disks, or similar uses, or for recording, indicating, or performing any operation or function at a predetermined time or times, any of the foregoing whether wholly or partly complete or knocked down (in which condition they shall be appraised at the valuation of the complete article); cases and casings for clockwork mechanisms imported separately; all the foregoing, 45 per centum ad valorem; and in addition thereto, upon any of the foregoing articles or parts thereof, having jewels, but not more than two jewels, in the escapement, $1 each; having more than two but not more than four jewels, $2 each; having more than four jewels, $4 each; * * *.

The burden was upon the importers to show not only that the classification by the collector of the imported goods as watch movements was wrong, but that they should have been classified as parts of watches, all under said paragraph 367. If they have failed to do so, the protest was properly overruled. Whether this has been done includes the consideration of a number of questions raised by counsel on both sides.

The importers argue, and the trial court held, that the imported goods could not be considered dutiable as watch movements because they were not complete; that said paragraph 367 does not provide for parts of watch movements, and that, hence, such parts must be held to be excluded therefrom. This is the rule, as announced by this court. *Murphy & Co.* v. *United States*, 13 Ct. Cust. Appls. 256, T. D. 41201, and cases therein cited.

They could not, either, be considered as entireties for dutiable purposes, under the authorities. As to those parts which were separately purchased and imported, there can be little question. As

to those completely assembled movements from which parts were abstracted, the record establishes that the movements and parts were imported at different times on different vessels. The dutiable status of these goods, as entireties, is controlled by the leading case, *United States* v. *Schoverling*, 146 U. S. 76. There, gunstocks were imported, which were classified for duty as guns. It was shown they were to be fitted with barrels, separately imported. The Supreme Court held they were not dutiable as guns. In the course of the opinion by Blatchford, Judge, this was said:

* * * It nowhere appears that these gunstocks had formed part of completed guns in Europe, nor was the question of the importation of the barrels for the guns involved. In the present case, the dutiable classification of the gunstocks imported must be ascertained by an examination of them in the condition in which they are imported. *Worthington* v. *Robbins*, 139 U. S. 337.

The doctrine of entireties is a familiar one in customs laws. However, we are unaware of any case where parts of articles, even though originally assembled, which were imported at different times and on different vessels, were ever held to be entireties for tariff purposes. Examples of the cases where the doctrine has been applied are *Altman & Co.* v. *United States*, 13 Ct. Cust. Appls. 315, T. D. 41232; *Salemi & Sons* v. *United States*, 19 C. C. P. A. (Customs) 43, T. D. 44892; *United States* v. *Irwin, et al.*, 78 Fed. 799.

In the case last cited, the court thus commented upon the administrative and legal difficulties involved in an attempt to classify as entireties parts of an article, separately imported:

When the barrels and stocks are shipped upon different vessels, it may happen that they can never be assembled together again as a complete gun. The dangers of navigation and other contingencies may intervene to prevent it. It is not for the customs officers, in imposing duties, to speculate upon these contingencies. They must take the articles as they find them to be upon examination. If they can not, by assembling them together, discover that they are really a different thing, it is their duty to classify them as the article they purport to be.

The goods could not, therefore, be properly classified as watch movements, under the entireties doctrine.

Said paragraph 367, it will be observed, provides for "watch movements * * * assembled or knocked down." It may be suggested that when the importers bought completely assembled watch movements, partially disassembled them, and imported them, they were importing "knocked down" watch movements. This might well be true if all parts were imported at the same time, even in separate packages. When, however, only a part of the disassembled movement is imported, it is not a complete movement, but a part thereof, and hence is not provided for in this paragraph as watch movements, "knocked down." See *United States* v. *Hannevig*, 10 Ct. Cust. Appls. 124, T. D. 38384.

We next inquire as to their dutiability as "parts of watches," under said paragraph. That they are, in fact, parts of watches, can not be denied. But are they, in a tariff sense, parts of watches? We have held to the contrary in *United States* v. *Hengerer Co.*, 15 Ct. Cust. Appls. 390, T. D. 42568. In that case we called attention to the fact that a clear tariff distinction had been made by the Congress between watch movements and watch parts, and said:

> The merchandise involved is conceded to be watch movements. They are not, therefore, parts of watches for tariff purposes.

It is true, in the case last cited, the watch movements were completely assembled. But it can not be discerned wherein this distinguishes that case from the one at bar. The articles imported here are watch movements, incomplete, but watch movements nevertheless. They have ceased to be mere "parts," but are assembled with gearing, jewels, plates, and other parts, until they have become those entities known as watch movements.

In *United States* v. *Hengerer Co.*, *supra*, referring to the language of said paragraph 368—

> \* \* \* any device or mechanism having an essential operating feature intended for measuring time, \* \* \* wholly or partly complete \* \* \* having more than four jewels, \* \* \*,

we held that "a watch movement answers exactly to that description." It will be observed, also, that said paragraph 368 provides for such mechanisms "partly complete." Therefore, the language applies exactly to an incomplete watch movement.

The goods were therefore properly classifiable under said paragraph 368. However, the importers having failed to make a proper protest, the original classification of the collector must stand, without approval of its correctness.

It is argued by the importers that by such a conclusion, in other cases, the importers might be compelled to pay a higher duty upon an incomplete watch movement than upon a complete one. The importers have a right to so prepare their goods for importation that they may obtain a more favorable rate of duty. It may be observed, however, that in so doing, they should also have in mind the other provisions of the law, which may apply to such goods, when so altered in dutiable character.

The judgment of the United States Customs Court is in all things *affirmed.*

### DISSENTING OPINION

BLAND, Judge: I can not agree to the decision of the majority and will briefly assign reasons for such disagreement.

In the first place, I am not certain but that under the doctrine of entireties, the articles at bar are not watch movements. I recognize

certain difficulties which would follow holding these parts of watches to be watch movements under the doctrine of entireties, but, nevertheless, *United States* v. *Schoverling*, 146 U. S. 76, is no authority for holding that they are not entireties, because in that decision the court definitely pointed out that "It nowhere appears that these gunstocks had formed part of completed guns in Europe * * *." The importation at bar is the major portion of what were complete watch movements in the foreign country.

The statute at bar provides for watch movements "assembled or knocked down." It might be pertinent to inquire: Can an importer knock down his entirety and import the major portion of it at one time, with the manifest intent of recombining it later with the portions not included in the shipment, and then later combine it and thus avoid the careful provision of Congress for watch movements either assembled or knocked down?

I am inclined to think that the decision in this case could have been worked out on the theory of entireties. But, if it were conceded that the importation is not watch movements, I disagree with the court's holding that the shipment is not "parts of watches." The majority evidently concluded that *United States* v. *Hengerer Co.*, 15 Ct. Cust. Appls. 390, T. D. 42568, could not be distinguished and was controlling. I think the *Hengerer* case could be distinguished, if it was thought desirable to do so; and if it could not be distinguished, then I would favor frankly overruling it.

Since the *Hengerer* case is so important to the decision of this case, I feel compelled to briefly discuss it. In that case, we had before us a complete 16-jewel watch movement, *adjusted*. We held that the watch movement provision of paragraph 367, Tariff Act of 1922, did not provide for a 16-jewel watch movement, adjusted, but that Congress, in making a special provision for a complete watch movement indicated that it never intended for complete watch movements to be regarded as parts of watches, and, therefore, that it was neither a watch movement nor a part of a watch, and fell within the provision for time-measuring devices in paragraph 368 of the same act.

If the *Hengerer* case were before us to-day, in the light of subsequent consideration, I have no doubt we would hesitate a long time before we would hold that the special provision for certain kinds of complete movements was any indication that Congress did not intend other kinds of complete movements to be regarded as parts of watches. Of course, to have regarded the complete movement in the *Hengerer* case as a part of a watch would have had the anomalous result of levying a lower rate of duty upon an adjusted watch movement than upon an unadjusted one, but in my judgment this anomaly is not as glaring as the one which results from our decision in requiring classification of complete watch movements among the meters and timing

devices and parts at a rate of duty entirely out of proportion to the rates which Congress had provided for watches, parts of watches and watch movements. But, certainly the reason which controlled the court there does not prevail here. These are not complete watch movements, and in my judgment Congress made no other provision for this kind of merchandise than in the provision for parts of watches. That it is a part of a watch, in fact, can not be disputed, and it ought to be so regarded for tariff purposes.

A consideration of the whole context of paragraph 367, Tariff Act of 1922, together with the legislative history of the same, leads one to the inevitable conclusion that Congress, spurred on by the vigilance and the insistent demands of a well-organized domestic industry, prepared paragraph 367 with most unusual care so as to include, somewhere therein, all watches and parts, and that it never intended paragraph 368, devoted to "clocks and clock mechanisms," as a catch-all provision for the watch paragraph. It follows that in the case at bar we should not be pursuaded that Congress, by the provision for completed movements, intended to require that parts of movements should not be regarded as parts of watches.

It is my view, therefore, that the *Hengerer* case can be distinguished from the facts at bar, although it is also my judgment that the court fell into error in deciding the *Hengerer* case, and that if the importation at bar consisted of a completed watch movement (not falling within the watch movement provision), I would frankly favor overruling the *Hengerer* case. Having participated in the decision of the *Hengerer* case, and having given my unqualified indorsement to that decision at the time it was handed down, I feel that I can, with entire propriety, frankly state my present attitude toward it. In the instant case we do not have an adjusted complete watch movement, and the anomaly we there sought to avoid would not prevail here. If the importation at bar should not be regarded as a watch movement, under the doctrine of entireties, it is, I think, a case where the importer has so conditioned his merchandise that he is entitled to a lower rate of duty thereon than it would otherwise take. In customs jurisprudence this situation is not an unusual one.

In paragraph 367 Congress has made provision for the following: (1) Watch movements, (2) watchcases, (3) jewels, (4) enameled watch dials, and (5) parts of watches. I suppose a watch mainspring separately imported would be regarded as a part of a watch, and a watch spring in its housing and possibly with a few wheels attached, would be regarded as a part of a watch. As more parts of the movement are added to this assembly, where would the proper line of demarcation be made between parts of watches and parts of timing devices (in paragraph 368)? If the decision of the majority is to be

looked upon as a guide in classifying incomplete watch movements in the future, it is difficult for me to see how it will be possible to avoid anomalies far more regrettable than those referred to above.

GARRETT, J., concurs in the foregoing views.