BAMBOO & RATTAN WORKS, INC. *v.* UNITED STATES (No. 4700)[1]

United States Court of Customs and Patent Appeals, February 18, 1952

*Sharretts, Hillis & Paley* (*Howard C. Carter* of counsel) for appellant.
*Charles J. Wagner*, Acting Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel), for the United States.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY Associate Judges

GARRETT, Chief Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, entered in conformity with its decision, Abstract 55719, 27 Cust. Ct. 271, overruling two protests (the cases being consolidated for trial) of the importer whereby recovery is sought of an alleged excess of duty assessed by the Collector of Customs at the port of New York City on merchandise stated in the decision to be described on the invoices as "Split Bamboo Sticks, dyed green color, pointed one end."

The merchandise was classified and duty assessed under the clause in paragraph 409 of the Tariff Act of 1930 reading:

* * * all articles not specially provided for, wholly or partly manufactured of * * * bamboo * * * 45 per centum ad valorem.

Each of the protests claims that classification should be made and duty assessed under that clause of the same paragraph reading:

* * * split bamboo, 1¼ cents per pound; * * *.

[1] C. A. D. 480.

An official sample of the merchandise was introduced in evidence as importer's Exhibit 1. It may be visualized readily from the stipulation of counsel that

* * * the merchandise consists of bamboo, split, cut to various lengths, pointed on one end, dyed, and used exclusively as stakes to support growing plants.

No testimony was taken in the case, but the foregoing stipulation was introduced at a hearing before the Judges of the First Division of the Customs Court, at which hearing the following colloquy occurred:

Chief Judge Oliver: Mr. Vale [counsel for the Government], is there any dispute as to the statement made by counsel that this sample consists of split bamboo, to begin with?
Mr. Vale: Bamboo split.
Mr. Carter [counsel for importer]: I am going to offer—
Mr. Vale: There is going to be a stipulation.
Chief Judge Oliver: I am wondering at this stage, on the statement made by counsel, is there any question as to whether or not it is split bamboo, and does the issue then get around to the point that being pointed, or something like that, that it is manufactured? Is that the manipulation, or do you call split—is the splitting of it a manufacturing process?
Mr. Vale: No, sir, not the splitting of it. It is the pointing of it that Government contends—
Chief Judge Oliver: So is that the proposition, that is split bamboo?
Mr. Vale: No. Bamboo split.

The foregoing would seem to imply that the attorney who represented the Government at the trial may have entertained the view that there is some distinction in a tariff sense between split bamboo and bamboo split. It is not so contended before us, and we agree with the contention of counsel for importer that there is no such distinction, but we do not agree with him that the decision in the case of *Nootka Packing Co., et al.* v. *United States*, 22 C. C. P. A. (Customs) 464, T. D. 47464, 67 Treas. Dec. 56, sustains his position here. No contention was made that the claims there involved should be classified as manufactures.

Other cases cited in the brief for appellant include *Robertson* v. *Gerdan*, 132 U. S. 454; and *Chew Hing Lung* v. *Wise*, 176 U. S. 156. In the former, pieces of ivory for piano keys and organs ready to be scraped and glued to wood were classified as manufactures of ivory and were claimed to be classifiable under provisions in the 1874 and 1883 tariff acts for "musical instruments of all kinds." The Supreme Court sustained the collector's classification of them as manufactures of ivory.

In the *Chew Hing Lung* case, *supra*, tapioca in the form of flour was held by the Supreme Court to be classifiable under the *eo nomine* provision for tapioca in the free list of the 1890 tariff act, as claimed

by the importer, rather than as a preparation fit for use as starch, as claimed on behalf of the Government.

Other cases cited are *United States* v. *Nippon Co., et al.* and *Nippon Co., et al.* v. *United States*, 32 C. C. P. A. (Customs) 164, C. A. D. 303, relating to the classification of certain seaweeds. We think it unnecessary to review those cases here.

The decisions in the three foregoing cases were cited in connection with appellant's argument relative to an n. s. p. f. provision considered in connection with an *eo nomine* designation. The facts in those cases are not analogous to the facts in the instant case, but the decisions in the *Nootka* and the *Chew Hing Lung* cases, *supra*, are more in conformity with the position of the counsel for the Government here than with that of counsel for appellant. The brief for the Government aptly states:

Appellant further argues that the provision for "articles not specially provided for wholly or partly manufactured of bamboo" does not cover an article of bamboo wholly or partly manufactured of *split* bamboo. This is a forced and labored distinction. Applying the doctrine of the *Nootka* case, *supra*, the provision for articles wholly or partly manufactured of bamboo would cover articles manufactured of bamboo in whatever form. In this connection, we may also refer to a case cited by appellant, *Chew Hing Lung* v. *Wise, Collector*, 176 U. S. 156, holding that tapioca flour is classifiable as tapioca. (Italics quoted.)

Appellant here seeks to have the bamboo sticks classified as apparently they would be if splitting were the only operation applied to them. There were other operations, and the resulting products, while simple, are more than mere sticks; (a) they were cut to the desired lengths, (b) their ends were sharpened, and (c) they were dyed. So, including the splitting, at least four operational steps were employed. These were manufacturing steps, all leading to, and finally resulting in, the production of finished articles of commerce wholly or partly manufactured of bamboo. Except for the dye, all the material is bamboo. The dyeing step is important in view of the intended use of the articles. The finished articles, as stated in the decision below, have a distinctive name—"stakes"—different from the materials composing them, and they have "a new use, i. e., to support growing plants."

The bamboo material was not merely "advanced in condition" as suggested in the brief for appellant. It was made into finished articles.

The brief for appellant states:

* * * Split bamboo *per se* is a manufacture of bamboo, but it is a manufacture of bamboo that *is* specifically provided for. (Italics quoted.)

That is true, of course, but the articles before us are something more than split bamboo sticks, and as finished articles they are not specially provided for by the provision for split bamboo.

The judgment of the Customs Court is *affirmed*.