(C. D. 1813)

AIR CLEARANCE ASS'N, INC. } *v.* UNITED STATES
WESTRO, INC.

United States Customs Court, First Division

(Decided October 18, 1956)

*Sharretts, Paley & Carter* (*Howard Clare Carter* and *Richard F. Weeks* of counsel) for the plaintiffs.

*George Cochran Doub*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

OLIVER, Chief Judge: This case involves so-called tanks or cartridges for lighters. They were assessed with duty at rates equivalent to 110 per centum ad valorem as parts of cigarette lighters of the class covered by the provisions of paragraph 1527 (c) of the Tariff Act of 1930, which, so far as pertinent, reads as follows:

> Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, cardcases, chains, cigar cases, cigar cutters, cigar holders, cigar lighters, cigarette cases, cigarette holders, * * *, and like articles; all the foregoing and parts thereof, finished or unfinished: * * *.

Plaintiffs' principal claim is that these tanks were so defective that they "completely failed to function as parts of cigarette lighters." It is contended, therefore, that the articles should be classified as manufactures of metal, not specially provided for, under paragraph 397 of the Tariff Act of 1930, as modified by T. D. 51802, with a duty assessment of 22½ per centum ad valorem. Plaintiffs' alternative claim is that the tanks in question are properly classifiable under paragraph 1552 of the Tariff Act of 1930, as modified, *supra*, as parts of smokers' articles, carrying a dutiable assessment of 30 per centum ad valorem. Plaintiffs further allege that the collector's assessment of the tanks in question was void, because, as stated by counsel in his opening statement at the time of trial (R. 3):

> * * * if they are parts of cigarette lighters, we claim that they are a class, type or kind which on the day of importation was uniformly and generally assessed for duty at 30% ad valorem and at the date of importation there had been no effective ruling relating to a change of practice by the Bureau of Customs or other authority. There was a ruling T. D. 52816, effective thirty days after the publication, and that 30-day period had not elapsed at the time of this importation.

The Treasury Department ruling referred to (86 Treas. Dec. 333, T. D. 52816) reads as follows:

A practice has developed of classifying all combination pocket and table cigarette lighters under paragraph 1552 of the Tariff Act of 1930, as modified, as smokers' articles, rather than under paragraph 1527 (c), as modified, as articles designed to be carried on or about the person. The practice developed after decisions had been rendered by the United States Customs Court (Abs. 41771, 2 Cust. Ct. 792; Abs. 44662, 5 Cust. Ct. 380) holding certain combination lighters with removable bases to be dutiable under paragraph 1552 on the basis of their condition at the time of importation.

In a case reported as T. D. 49349, the United States Customs Court held that a combination lighter with a removable base had been designed to be carried on or about the person and that it was therefore classifiable under paragraph 1527 (c). In that case the lighter was a complete lighter without the base and it was very suitable to be carried on or about the person. It was more easily operated without the base and, when the base was removed, there was revealed a ring for use in suspending the lighter on or about the person. The court held that it was immaterial that the lighter was also designed for use as a table lighter.

In Abstracts 41771 and 44662, no reference was made to T. D. 49349 and the decisions indicate that no evidence, other than the samples of the imported articles, was submitted. It is believed therefore that the court did not intend to overrule its decision in T. D. 49349, and that cases may be successfully defended upon the principle relied upon in the last-mentioned decision. See also T. D. 42562, T. D. 44003, T. D. 49593, Abs. 40003 (1 Cust. Ct. 516), Abs. 44487 (5 Cust. Ct. 346), and Abs. 47650 (9 Cust. Ct. 432).

In the circumstances, the principle set forth in T. D. 49349 should be given effect. That is, cigar and cigarette lighters, obviously designed to be carried about the person whether or not also designed for use as table lighters, imported with bases not integral parts of the lighters, are in fact articles which, in their imported condition, are designed to be carried about the person and which are provided for by name and description in paragraph 1527 (c).

However, as this ruling will result in the assessment of duty at a higher rate than has heretofore been assessed on combination lighters under a uniform and established practice, it shall be applied to such lighters only when entered or withdrawn from warehouse for consumption after 30 days after the publication of this decision in the weekly Treasury Decisions.

Plaintiffs' principal witness was the president of the importing corporation who is also "Director General and owner of the majority of the shares" of the foreign manufacturer of the imported merchandise under consideration. He identified a sample (plaintiffs' illustrative exhibit 1), which is a metal tank, $1\frac{1}{2}$ inches high and three-eighths of 1 inch in width, composed of iron, nickel plated, and made to hold butane gas that serves as fuel for lighters. The witness testified that the tank in question (illustrative exhibit 1, *supra*) "was ordered according to specifications and was made according to them" for a specific lighter which he admitted to be a pocket cigarette lighter (plaintiffs' illustrative exhibit 2–A). A metal stamping (plaintiffs' illustrative exhibit 2–B) can be attached to the lighter, and, when so attached, serves as a base so "the lighter can stand on the table."

The witness stated that both the lighter and the base are manufactured by "a Vienna factory" and that neither he nor his company import the articles. The tank in question (illustrative exhibit 1, *supra*) is essential to the use of the pocket lighter for which it was designed. To replace the tank after the butane gas has been exhausted, the screw, fitted to the bottom of the lighter, must be removed to "get the tank out of the lighter."

The witness admitted that he did not see the tanks in question at the time of their importation, but learned of their alleged defective condition after complaints were received from the actual purchaser, Charles H. Fishberg & Son. At the purchaser's place of business, the witness examined some tanks like those in question, which he found to be leaking to such an extent that the gas escaped through soldered parts. The tip, that is screwed to the top, was broken and many other parts were rusty.

On cross-examination, the witness testified that he examined only "twenty or thirty" tanks out of importations aggregating thousands in number and that the tanks he examined were not from the shipment under consideration, but from a prior shipment. He stated further that, after the purchaser had received some "bad" tanks, "he didn't accept the good ones either" and finally "cancelled the whole arrangement, an order of two million pieces."

The witness' testimony also discloses that, prior to the exportation of these tanks, they were checked under air pressure in the foreign manufacturer's plant and found to be in good condition. Samples of these tanks, received by the witness prior to the importation of the shipment under discussion, were in perfect condition.

Plaintiffs also called as a witness the customs examiner who advisorily classified the tanks in question, and whose duties include the examination of smokers' articles. As plaintiffs' witness, he merely stated that a lighter with the base attached such as the articles in evidence (plaintiffs' illustrative exhibits 2–A and 2–B), imported prior to promulgation of the Treasury Department ruling, T. D. 52816, *supra*, "would have been advisorily classified by me as a table lighter."

When the customs examiner was called as defendant's witness, he testified that, when the shipment in question arrived, he examined samples therefrom and "they all appeared to be in good condition." He stated further that the tanks in question, in their condition as imported, are, by reason of their size and shape, "only suitable for use in pocket lighters."

Defendant introduced the testimony of four additional witnesses, all of whom are associated with domestic manufacturers of, or dealers in, cigarette lighters. Their combined testimony is to the effect that the tank in question (illustrative exhibit 1, *supra*) is "a container or a cartridge for a pocket lighter" (R. 48) and that the metal piece

(illustrative exhibit 2–B, *supra*) is not a base for a table lighter, but merely a raw metal stamping. The distinction between a pocket lighter and a table lighter, and tanks for the two different types of lighters, was clearly stated by defendant's witness, Seymour A. Rappoport, chief designer for the Ronson Art Metal Works, manufacturer of Ronson lighters. Distinguishing between the different classes of articles, the witness testified as follows:

Q. What is the difference between a tank for a pocket lighter and a tank for a table lighter?—A. A Tank [*sic*] for a pocket lighter is so designed to fit into the pocket comfortably, and not be bulky or oversize; a table lighter tank is much larger in size, more capacity, holds larger amounts of fuel, giving you longer periods without having to refuel.

Q. What is the difference between a pocket cigarette lighter and the table lighter?—A. The pocket cigarette lighter is designed to fit into the pocket without creating a bulky bump or lump; a table lighter is designed as a decorative embellishment for the home, not only functioning as a lighter but the motif blends in with the period; * * *.

Based upon the distinguishing characteristics outlined in the foregoing quoted testimony, defendant's testimony is consistent in showing that the article in question (illustrative exhibit 1, *supra*) is a tank for a pocket lighter and that the metal stamping (illustrative exhibit 2–B, *supra*), when attached to the pocket lighter, makes it stand "much more firmer" (R. 54), but does not convert the article into a table lighter.

The record, as hereinabove outlined, will not support any of plaintiffs' claims. Much of plaintiffs' argument is based on the assumption that the lighter and the alleged metal base (illustrative exhibits 2–A and 2–B, *supra*) constitute an entirety. "The doctrine of entireties in customs jurisprudence is a rule of classification and rests upon the proposition that the classification of imported articles for duty purposes is determined by their condition at the time of importation," *Donalds Ltd., Inc.* v. *United States*, 32 Cust. Ct. 310, C. D. 1619, citing *United States* v. *Schoverling, Daly & Gales*, 146 U. S. 76, 36 Law. ed. 893. Plaintiffs' testimony establishes that the lighter and the alleged metal base (illustrative exhibits 2–A and 2–B, *supra*) are manufactured in a Vienna factory, but no attempt was made to show how the articles were imported into this country. In fact, the source of the two articles, used as exhibits in this case, was not disclosed. The importer of the tanks under consideration, who is also associated with the foreign manufacturer thereof, admitted that neither he nor his company imported the lighter or the metal base and stated, further, that the manufacturer of the tanks in question did not produce either the lighter or the metal base. On the other hand, defendant's testimony, adduced through well-qualified witnesses, is to the effect that the lighter (illustrative exhibit 2–A) is a pocket lighter, and that the

raw metal stamping (illustrative exhibit 2–B) is not a base for a table lighter. The samples, themselves, lend support to defendant's testimony. The lighter, in size and in shape, is convenient to be carried on or about the person. The stamping is an unfinished piece of metal. That it is made in a way that it can fit into the base of the lighter is not sufficient, in the light of the testimony herein, to say that the combined articles form an entirety for tariff purposes. The evidence before us does not warrant a conclusion holding the lighter and the metal stamping to be an entirety.

This deficiency in the proof virtually removes from discussion plaintiffs' claim with reference to the Treasury Department ruling, T. D. 52816, *supra*, which specifically refers to a definite style or class of cigarette lighters, i. e., "combination pocket and table cigarette lighters." The merchandise under consideration consists of a metal tank (illustrative exhibit 1, *supra*), made according to specifications and designed for use as the fuel tank in the pocket lighter (illustrative exhibit 2–A). As such, it is an integral part of that pocket lighter. The provisions of the cited Treasury Department ruling have no application to the merchandise under consideration.

In urging classification of the tanks in question as manufactures of metal, not specially provided for, because they "completely failed to function as parts of cigarette lighters," counsel for plaintiffs, in their brief, rely on the case of *Cleevelandt Corp.* v. *United States*, 30 Cust. Ct. 458, Abstract 57341. That case involved so-called "synthetic sapphire spheres," which the collector classified as parts of fountain pens or stylographic pens. Plaintiff claimed that the articles, in their imported condition, were, in fact, not ball points, and that they were not actually, practically, or commercially fit for use as parts of fountain pens. The court sustained plaintiff's contention, after finding that all of the sapphire balls, in their imported condition, were not perfectly spherical, a condition that deprived them of the character and condition of ball points and which rendered them totally incapable of functioning as parts of ball point pens. In this case, there is no comparable set of facts. The importer admitted that he did not see the tanks in question at the time of their importation. His testimony concerning their alleged defective condition is based on complaints received, after importation, from the purchaser in this country and on subsequent inspection at the purchaser's plant of "twenty or thirty" tanks, not from the shipment under consideration, but from a smaller, prior shipment. Of serious adverse affect to plaintiffs' position is the testimony of the customs examiner, who stated that, when he examined samples of this merchandise upon its arrival in this country, the imported tanks "appeared to be in good conditions." Neither the reasoning followed nor the conclusion reached in the *Cleevelandt Corp.* case, *supra*, can be applied herein.

Under the presumption of correctness attaching to the collector's classification, it is presumed that the classifying officer found every fact to exist that was necessary to sustain his classification. *E. I. du Pont de Nemours & Co.* v. *United States*, 27 C. C. P. A. (Customs) 146, C. A. D. 75. Hence, the collector's classification of the tanks in question as parts of articles, designed to be carried on or about the person, includes a finding that they are parts of lighters, or "like articles" within the class or kind of merchandise contemplated by paragraph 1527 (c), *supra*. In challenging the collector's classification, plaintiffs assumed the dual burden of proving that such classification was incorrect and of establishing the correctness of one of their claims. *Yardley & Co., Ltd., et al.* v. *United States*, 41 C. C. P. A. (Customs) 85, C. A. D. 533. Plaintiffs have not sustained their twofold burden.

Careful consideration has been given to all of the cases cited in the briefs of counsel for the respective parties, but, in view of our conclusion as developed herein, we deem it unnecessary to review or discuss any of them.

On the basis of the present record, and for all of the reasons hereinabove set forth, we hold that plaintiffs have failed to overcome the presumption of correctness attaching to the collector's classification of the merchandise under consideration. Accordingly, we hold the tanks in question to be properly classifiable as parts of lighters, designed to be carried on or about the person, and dutiable under paragraph 1527(c), *supra*, as assessed by the collector.

The protest is overruled and judgment will be rendered accordingly.