(C.D. 3959)

JOHN K. KEALY CO.  
JOSEPH A. PAREDES  } *v.* UNITED STATES

United States Customs Court, First Division

(Decided January 30, 1970)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.
*William D. Ruckelshaus*, Assistant Attorney General (*Owen J. Rader* and *Robert E. Burke*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

RE, Judge: The merchandise, the subject of this action, consists of a marking pen holder and three felt-tipped marking pen refills. Plaintiff's exhibit 1, a representative sample of the merchandise, shows that the marking pen holder and refills were imported attached to a cardboard sheet held firmly in place by a transparent plastic cover. This package, containing the pen holder and refills, is sold as a unit known as the "Pilot" "2½ miler" and on the cardboard sheet there are printed the words "Pen with refills writes '2½ miles' ".

The marking pen, consisting of the pen holder and one refill, was classified as an entirety under item 760.15 of the Tariff Schedules of the United States, which provides for "Marking pens having a wick-like tip of felt or other material", and duty was assessed at 20 per centum ad valorem. The second and third refills were separately classified under item 760.36 as "Refill cartridges" and assessed at 4 cents each, plus 27 per centum ad valorem.

The plaintiffs contend that the merchandise, consisting of the entire package, including the second and third refills, is properly dutiable at 20 per centum ad valorem under item 760.15 of the Tariff Schedules of the United States. It is the contention of plaintiffs that the two extra refills are dutiable as an entirety with the marking pen, i.e., the pen holder and one refill. In the alternative, plaintiffs contend that the refills are in fact marking pens having a wick-like tip of felt or other material. Hence plaintiffs assert that they are more specifically provided for as marking pens under General Headnote 10(c) and 10(ij) rather than under the provision for parts of any of the articles described in item 760.15.

The pertinent or competing provisions of the Tariff Schedules of the United States may be set forth as follows:

Schedule 7, part 10:
"Part 10 headnotes:

1. The provisions of this part cover pens and pencils designed for writing, marking, and similar uses * * *

\* \* \* \* \* \* \*

| 760.15 | Marking pens having a wick-like tip of felt or other material_____ | 20% ad val. |

\* \* \* \* \* \* \*

Pen points; and parts of any of the articles described in the foregoing provisions of this part * * *:

*   *   *   *   *   *   *

760.36     Refill cartridges_____ 4¢ each +27% ad val."

General Headnotes and Rules of Interpretation

"10. General Interpretative Rules. For the purposes of these schedules—

(a) the general, schedule, part and subpart headnotes, and the provisions describing the classes of imported articles and specifying the rates of duty or other import restrictions to be imposed thereon are subject to the rules of interpretation set forth herein and to such other rules of statutory interpretation, not inconsistent therewith, as have been or may be developed under administrative or judicial rulings;

*   *   *   *   *   *   *

(c) an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it; * * *

*   *   *   *   *   *   *

(ij) a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part."

The record contains the following oral stipulation entered into by the parties at the trial:

"* * * the subject of protest 67/50791, consists of a marking pen composed of a plastic case, and three refills which were imported mounted on a card with a cellophane cover. The plastic case and one refill were assessed with duty as an entirety at 20 per cent under Tariff Item 760.15 under the provision for marking pens having a wick-like tip of felt or other material, and the other two refills were assessed with duty at 4¢ each and 27 per cent under Tariff Item 760.36, under the provision for refill cartridges.

"In order to use the plastic case, one of the refills must be inserted therein after the protective plastic cap has been removed and discarded. The holder has no use for writing without the cartridges, which consist of a plastic container for the ink, with a wick-like tip, and a cover to protect the tip, and to prevent evaporation of the ink contained therein."

Plaintiffs assert that the pen holder and the three plastic fillers fall squarely within the rule of entireties set forth in *Altman & Co.* v. *United States*, 13 Ct. Cust. Appls. 315, 318, T.D. 41232 (1925), and quote the following paragraph from the *Altman* case:

"A consideration of these pronouncements of the courts leads to the conclusion that if an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately."

Plaintiffs are mistaken in their reliance upon the *Altman* case. The alleged "parts" in the *Altman* case were trimmings designed to be attached to corsets. After a consideration of the specific merchandise, the court therein said that it was manifest "that these goods were imported for the purpose of making therefrom a finished and completed article of commerce; that the various parts were designed to be used together and not separately, and that this was, in fact, the actual major use which was made of them by the importers." Under the factual circumstances presented in the *Altman* case the Government was correct in maintaining that the corsets and trimmings were to be treated as entireties. The U.S. Court of Customs Appeals therefore affirmed the judgment of the Board of General Appraisers which held that the goods therein imported were entireties for tariff purposes. The *Altman* case is, therefore, factually not analogous to the present case where the merchandise consists of a marking pen holder with three identical refills. An examination of the exhibit leaves no doubt that the three refills in the package are identical. Each has the same color ink, size and shape, serves the same function and is clearly a duplicate.

It is manifestly untenable to say, as stated by plaintiffs in their brief, that the intended function of the "Pilot" pen was to write "2½ miles" and that this required three refills. By the same reasoning, one might well assert that if the pen were advertised as writing 5 or 10 miles, a larger number of refills could be imported and that the complete package would still constitute an entirety. The intended purpose of the pen is to write, and for this purpose, only one cartridge need be attached to the pen holder.

The plaintiffs also rely upon and quote extensively from the case of *George Scherr Co., Inc.* v. *United States*, 40 CCPA 6, C.A.D. 489 (1952). The merchandise in the *George Scherr Co.* case consisted of "Speed Indicators Jacquet" for measuring the rotational speed of shafts, with sets of "accessory tips". The importer therein claimed that the tips were not entireties with the indicators but were dutiable separately. The appellate court sustained the decision of the trial court and held that the indicators and accessory sets of tips were entireties

for the tips were "constituent parts" of the indicators and were "indispensable to the performance of the manifold operations" for which the indicators were designed. 40 CCPA at 7.

The appellate court in the *George Scherr Co.* case relied upon the leading case of *Norma Company of America* v. *United States*, 6 Ct. Cust. Appls. 89, T.D. 35338 (1915), and quoted the following paragraph from that decision:

> "We think, speaking generally, the true interpretation of the paragraph is that any detachable or adjustable parts of a machine tool which are indispensable to enable it to perform the manifold operations for which it is designed, if imported therewith, not including reserve, duplicate, extra, or spare parts or purely hand tools or appliances, and not including belts designed to connect the tool with the motive power, are properly parts of a machine tool. * * *" 6 Ct. Cust. Appls. at 91.

Not only do the plaintiffs fail to note the dissimilarity of subject matter in the two cases cited, but they likewise ignore the express exclusion of "reserve, duplicate, extra, or spare parts" in the quoted statement from the *Norma Company of America* case. The *George Scherr Co.* case, therefore, fully supports the view of the defendant herein, and not that of the plaintiffs.

The same may be said of the case of *S.S. Kresge Co. et al.* v. *United States*, 69 Treas. Dec. 917, T.D. 48328 (1936), cited by the plaintiffs in their brief. The *S.S. Kresge Co.* case held that a mechanical pencil with one lead in the mechanism was an entirety and that the extra leads, imported in a storage area of the pencil cylinder, were dutiable separately as "refills". Indeed, the following statement in the *S.S. Kresge* case is particularly applicable here:

> "It thus appears that a mechanical pencil with a lead in the mechanism only, and without extra refill leads, is considered a complete entity. Without the lead in the mechanism the pencil would be useless, but with it, according to the record, it becomes a complete article of commerce, while extra refill leads are additions to what the record shows to be an already complete article." 69 Treas. Dec. at 918.

The law applicable to merchandise containing interchangeable parts has been set forth with great clarity in two cases dealing with fishing reels containing two spools. The cases are *Charles Garcia & Co., Inc.* v. *United States*, 45 CCPA 1, C.A.D. 663 (1957), and *United States* v. *Charles Garcia & Co., Inc.*, 48 CCPA 140, C.A.D. 780 (1961). The merchandise in the *Charles Garcia & Co.* cases consisted of a fishing reel with two spools, one mounted or attached to the reel, and a second or extra reel. In both cases, there was no question that the reel

with the one spool attached, constituted an entirety for tariff purposes. The question presented pertained to the status of the second spool.

The first case, *Charles Garcia & Co., Inc.* v. *United States*, 45 CCPA 1, C.A.D. 663 (1957), held that the second, or extra spool, which served the same purpose as the first spool which was attached or mounted to the reel, was a spare part dutiable separately. The second case, *United States* v. *Charles Garcia & Co., Inc.*, 48 CCPA 140, C.A.D. 780 (1961), affirmed the legal principles upon which rested the holding of the first case. On the facts of the second case, however, the court found that the proof concerning the utilization of the reel and spools indicated that the reel could only accomplish the dual functions for which it was intended, i.e. heavy and light fishing, if it were sold with two spools. It is to be noted, however, that the two spools were different in design, construction and use. Hence, in the second case, the reel was incapable of performing both functions without both spools, and they were therefore classified as an entirety with the reel.

The two *Charles Garcia & Co.* cases were recently treated at some length in a recent decision of this court which also dealt with the question whether a second, "extra" or "spare", spool was a "part" of the fishing reel or was dutiable as an entirely with the reel, *Mader & Co. et al.* v. *United States*, 63 Cust. Ct. 370, C.D. 3921 (1969). Since the merchandise in the *Mader & Co.* case was similar in all material respects to that in the second *Charles Garcia & Co.* case, this court applied the legal principles set forth in that case and held the reel and the two spools dutiable as an entirety. In the *Mader* case, the factual finding that the spools had a different size arbor to accommodate a thinner or heavier line for different types of fishing was crucial for the application of the principles which governed the *Charles Garcia & Co.* cases.

The holdings of these cases leave no doubt that where merchandise contains parts, and a part is classified as an entirety with the merchandise, a duplicate of that part that is an "extra" or a "spare", is not classifiable as an entirety with the merchandise.

In the case at bar, plaintiffs are correct when they state in their brief that exhibits are "potent witnesses". *United States* v. *Abercrombie & Fitch Co.*, 20 CCPA 267, T.D. 46060 (1932). An examination of the exhibit in this case will dispel all doubt as to the nature of the merchandise. Although packaged together, the "Pilot" "2½ miler" consists of a pen holder and three identical cartridges which serve identical purposes. One cartridge was properly dutiable as an entirety with the holder. Under the relevant authorities the second and third refill cartridges are duplicates of the first cartridge, and cannot be deemed to

be entireties with the pen holder and one cartridge which constitute the marking pen.

Plaintiffs' alternative contention that the refill cartridges are "in fact marking pens" dutiable under item 760.15 is also without merit. Perhaps the best answer to the argument is found in an examination of the exhibit. The pen is sold and advertised as having "refills", and only the holder contains the words "Pilot 2½ miler", and has a pocket clip. That a person, regardless of the difficulty, may write with a refill cartridge without using the pen holder for which it is designed, in no way affects the tariff classification of the refill cartridge.

Plaintiffs herein have not rebutted the presumption of correctness that attaches to the collector's classification. They have not met the burden of establishing that the collector's classification is erroneous and that the claimed classification is correct. *Nylos Trading Company* v. *United States*, 37 CCPA 71, 74, 83, C.A.D. 422 (1949) ; *United States* v. *Gardel Industries*, 33 CCPA 118, 121, C.A.D. 325 (1946) ; *Joseph E. Seagram & Sons, Inc.* v. *United States*, 30 CCPA 150, 157, C.A.D. 227 (1943).

The protest is therefore overruled. Judgment will issue accordingly.