**IKORA, INC.**

v.

**UNITED STATES.**

**C.D. 4202; Protest No. 66/43626-30565-65.**

United States Customs Court,
Third Division.
April 20, 1971.

Barnes, Richardson & Colburn, New York City (Peter J. Fitch, New York City, of counsel), for plaintiff.

L. Patrick Gray, III, Asst. Atty. Gen. (John A. Winters, New York City, trial atty.), for defendant.

Before RICHARDSON and LANDIS, Judges.

LANDIS, Judge:

The merchandise of this protest consists of a "WMF–IKORA" metal silver tray and a glass bowl-shaped dish made to fit into the shallow well of the tray, imported from Germany and invoiced as "butter dish".

Customs at New York classified the metal tray and glass dish as separate dutiable articles. The silver tray was assessed at 17 per centum ad valorem under TSUS item 653.80 as an article of base metal, coated or plated with precious metal, not specially provided for, of a type used for household, table or kitchen use. The glass dish was assessed at 50 per centum ad valorem under TSUS item 546.51 as glassware, not valued over $1.00 each, chiefly used in the household or elsewhere for preparing, serving, or storing food or beverages, or food or beverage ingredients, not specially provided for.

Plaintiff's dispute here is not with the classification of the metal tray under TSUS item 653.80 but with the separate classification of the glass dish under TSUS item 546.51. Plaintiff claims the glass dish should be classified and assessed as an entirety with the metal tray, dutiable under TSUS item 653.80.

Exhibit 1 is a sample of the glass dish imported with the sample metal tray, marked exhibit 3. Exhibit 2 is a sample of the glass dish imported with the metal tray of somewhat different style, marked exhibit 4. Defendant's illustrative exhibit B is a silver metal tray with a shallow well said to be "the bottom part of a combination of a glass dish, a sauce ladle, and a tray, sold as a sauce set. It also can be used with a butter knife and sold as a butter dish amongst other uses. Without the knife and without the sauce ladle, it can be sold as a candy dish, nut dish or for any functional use with liquids or dry candies, mints, et cetera." (R. 31–32.) Exhibit C is a domestic catalogue of silver plate articles which include a silver tray, glass dish and spoon catalogued as a jelly dish (glass lined) and spoon, ideal for serving relishes, jelly, preserves, pickles, and a jam jar, silver plate and spoon with a silver plate cover to hold jelly, jam and conserve.

It is stipulated that if the silver tray and glass dish are in fact entireties, "the entirety is in chief value of base metal, coated with silver." (R. 3.) At the trial, one witness testified for plaintiff and two witnesses testified for defendant. The testimony of Miss Frieda Hiller, for defendant, is concededly immaterial to the issue of whether the silver tray and glass dish are dutiable as an entirety.

Mr. Emanuel Drillman, testifying for plaintiff, stated that at the time the merchandise of this entry protest was imported, he was president of Taris Imports, Inc., the exclusive sales representative for Ikora products imported from Germany. He was familiar with the Ikora silver tray and glass dish which he said were imported, catalogued and sold as a unit.

The silver tray and glass dish are not sold separately. Each sale carries the

company's guarantee to replace the glass dish free of charge if broken. The silver tray and glass dish are sold to department stores, jewelers, and gift stores, where they are displayed as a unit.

The silver tray and glass dish, according to Mr. Drillman, are designed as a butter dish but can be used to serve marmalade and cheese. He had never seen them used separately. The silver tray carries a label warning that it should not be cleaned with abrasives or detergents. Mr. Drillman stated that if the silver tray were washed with detergent, it would, thereafter, tarnish.

On cross-examination, Mr. Drillman said that the silver tray and dish are denominated a butter dish or cheese dish, also sliced pineapple server, and fruit cocktail server. The tray cannot be used alone as a food server because it might be damaged by the food. He did not think the glass dish would be used alone as a candy or mint dish because it was not decorative enough. Mr. Drillman made it clear that the silver tray and glass dish are sold as a unit. He could not account for how a housewife might use the glass dish alone, she could use it for "whatever she wants to" (R. 18). The glass dish is not sold separately but as a unit with the tray to protect it from tarnishing "when it is used for butter or cheese or anything else, as a matter of fact." (R. 19.) If a perishable product were served in the glass dish, the glass dish could and probably would be stored in the refrigerator without the tray. Mr. Drillman did not know if another glass dish would fit the imported silver tray but said that the imported glass dish was made to fit the well of the silver tray so that it "does not shake." (R. 24.)

Defendant called Mr. Harry Snelwar, president of Universal Importing Corporation, importers of chrome and silver plate, china and glass, to testify. Mr. Snelwar testified that illustrative exhibit B is a metal tray which his company sells in combination with a glass dish (not in evidence) and a sauce ladle (not in evidence). In some cases the glass dish combination of exhibit B was sold by itself but not as a general practice.

Mr. Snelwar recognized exhibit 1 as a typical liner for a butter dish or a cheese dish used in conjunction with a tray and was of the opinion that that "would be more or less a restrictive use of this [exhibit 1] glass" (R. 34), "a very difficult item to sell by itself." (R. 35.) His company has had the experience of having to closeout glass dishes of the exhibit 1 type at a very low price indeed, in order to make them marketable and "sold them at a considerable loss". (R. 35.) Silver trays, similar to exhibit 3, he said, were sold as an open stock item without the glass dish by many silver houses.

He identified the silver tray and glass dish catalogued at page 4 of exhibit C as a jelly dish sold as a single unit. The silver tray or one similar to that shown with the jelly dish is also sold as a separate unit.

On cross-examination, Mr. Snelwar testified that his company does not sell exhibit B separately but as a sauce set with glass dish and sauce ladle. The glass dish with the sauce set is a fancy type glass sold separately in open stock as is the sauce ladle. Exhibit B could be used with an ordinary glass dish that fits the well of the tray, but exhibit 1 could not because its diameter exceeds, i. e., does not fit the well of the metal tray (exhibit B). It was Mr. Snelwar's opinion that exhibit 1 was made specifically for the imported metal tray and had a value as does everything that is functional. "But, this [exhibit 1] would have a minimal value * * * couldn't be sold at a profit * * * would have to be sold at a loss * * * would only bring about five cents in the market" (R. 40–41), and is not commercially salable at a profit. Exhibit B was imported as part of the unit with the glass dish and ladle and the combination sold as a sauce set.

On redirect examination, Mr. Snelwar testified that, in his opinion, exhibits 1 and 2 (glass dishes) could be used separately but they would have no "general acceptance" and if sold as a closeout item, they would have to be sold at a loss, in which case they "could be used as an ash tray, for liquids—for anything". (R. 43.)

Counsel for both sides, having read and analyzed substantially the same legal precedents, come to opposite conclusions. Plaintiff concludes that the imported silver metal tray and glass dish are dutiable as an entirety because, as the facts support, they are imported and sold as a unit and the trays are not sold separately. In support thereof, plaintiff argues that the tray and glass dish are not used separately but are designed to be used together, to serve butter, cheese or condiments, and in combination form a new article with a more limited use than that for which trays and glass dishes are otherwise generally used.

Defendant emphasizes that the metal tray and glass dish are presumptively expressly provided for in TSUS, the glass dishes under item 546.51 as glassware, chiefly used in the household or elsewhere for preparing, serving or storing food, and the metal trays under item 653.80 as articles of a type used for household or table use. Defendant concludes that since the dish has an individual identity and can be used by itself, it is not dutiable as an entirety and to hold that it is, would "thwart Congressional intent to provide for it as glassware." (Defendant's brief, page 17.)

The above contentions reflect what is more or less usual argument in cases involving issue as to whether imported merchandise should or should not be classified as an entirety. The most recent decisions of the court of appeals on entireties, Miniature Fashions, Inc. v. United States, 54 CCPA 11, C.A.D. 894 (1966); United States v. Altray Company, 54 CCPA 107, C.A.D. 919 (1967); and Lafayette Radio Electronics Corp. v. United States, 57 CCPA 62, C.A.D. 977 (1970), lead us to conclude that the silver metal tray and glass dish imported in this case should be treated and classified as an entirety.

The merchandise in *Miniature Fashions* consisted of "cabana sets" described as "two-piece shirt-short sets". Customs classified the shirts and the shorts separately under the Tariff Act of 1930, the shirts as shirts expressly provided for, dutiable at 25 per centum ad valorem under paragraph 919, as modified, and the shorts as clothing and articles of wearing apparel, not specially provided for, dutiable at 20 per centum ad valorem under paragraph 919, as modified. This court overruled the importer's claim that the shirts and shorts were entireties dutiable under paragraph 919 at 20 per centum ad valorem as clothing and articles of wearing apparel, not specially provided for. In reversing this court, the court of appeals analyzed and commented on the facts as follows:

From the authorities discussed in the opinions below and the argument presented here, it is apparent that the doctrine of entireties is to be used as an aid to ascertain proper classification. Where Congress has not created an express classification to govern, the problem is one of ascertaining the most suitable classification. The result reached in Lang [(Lang Co. v. United States) 15 Ct.Cust.Appls. 341, T.D. 42495 (1927)] appears to place the doctrine of entireties in its proper perspective. Thus whatever criteria from the doctrine of entireties is applied, e. g., "function," "use," "individual entities," "newly created entity," "intent," "design" or "commercial unit," such criteria may not circumvent the intent of Congress.

The problem in the instant case is that the appellee [defendant below], obviously utilizing the criteria of the doctrine of entireties that supports its position, argues each portion of the goods retains its "identity and function" when combined. Further, discarding "fashion," a wearer may combine any upper and lower portion he or she so desires, or their parents allow, without any attenuation of "identity and function."

The upper portion always functions as a shirt. Appellant does not dispute this logic. Rather, emphasizing other portions of the doctrine of entireties, it argues that it has imported a new "commercial entity," recognized by the trade as such, i. e., "cabana sets." It has shown that the imported goods are always sold as a unit and should one of the parts be damaged, the entire set is returned for credit or replacement. Such returns are either placed in the waste basket or given to charity. Appellee does not disagree.

It is apparent that the doctrine of entireties, because of its scope, can lead to two contrary conclusions depending on what criteria are given controlling effect. It is also apparent that no decision here advanced by the parties is dispositive of the issue.

Considering all of the evidence of record and the applicable law, we think the imported goods are more properly classified as entireties under paragraph 919 as articles of clothing n.s.p.f.

Classification is determined by the condition of the articles at the time of importation. United States v. Schoverling, *supra* [146 U.S. 76, 13 S.Ct. 24, 36 L.Ed. 893 (1892)]. Viewed at that time, the evidence shows that they were designed as a unit, matched as to color, print and fabric, imported as a unit and pinned together, invoiced as a unit, and sold as a unit both in wholesale and retail channels. When the parts of the merchandise are separated and either part is returned for credit, or when both parts are returned for credit, the parts of the unit are either given to charity or placed in the waste basket. Thus, there appears to be no commercial value of the separate articles comprising the unit except as they are joined as a unit.

The lower court appears to have been impressed with the consideration that the taste of the wearer, in the last analysis, must ultimately dictate whether the articles are always worn as a unit. Appellee has implemented this with argument to the effect that frugal parents would not discard the upper portion should the shorts be damaged and that therefore the upper portion will be worn as a shirt.

We do not think that the taste of the wearer and the possibility that in the future he may choose to wear either article separately or in' combination with other articles of wearing apparel can be made controlling as to the proper classification of the goods as imported. These considerations could dictate an opposite result to that reached in R. F. Downing & Co. v. United States, 49 Treas.Dec. 1161, Abs. 51414. Therein a two-piece dress suit (coat and trousers) and a three-piece dinner set (coat, vest and trousers) were held to be entireties. Appellee would have us distinguish this case on the basis of the difference between the formality attending the occasion on which these articles and the imported goods are worn, and inferentially, the difference in cost between the goods. Appellee also argues that "neither coat would be capable of fulfilling its intended use or purpose" without the accompanying trousers. We fail to see why the cabana sets, designed, imported and sold always as a unit, do not similarly qualify as an entirety. It is readily apparent that regardless of the cost of a particular article of wearing apparel, the possibility exists that someone may, for his or her own reason, wear but one portion of the designed apparel.

We think appellant has shown, by clear and convincing evidence, that the imported articles are entireties for classification purposes in view of the applicable law.

There remains for consideration whether this determination circumvents any intent of Congress. We think the evidence establishes that the upper portions of the cabana sets are not the "shirts" on which Congress has fixed a duty of 25% ad val. Appellant has imported what has been designed and sold exclusively as a unit. The upper portion, from the evidence of record, has no commercial value when returned. The up-

per portions are not imported as separate shirts. In view of the evidence we think the upper portion of the imported sets is more properly classified under paragraph 919 as part of an entirety of clothing rather than as a shirt under the same paragraph. We do not find this to be contrary to the considerations given effect in *Lang, supra.* [54 CCPA at pages 16, 17, 18.]

*Altray, supra,* involved the classification of merchandise consisting of miniature artificial Christmas trees, each about two inches high and adhesively affixed at the base to a foil-wrapped chocolate wafer. Customs classified the miniature trees and wafers as separate articles, the tree as an article in chief value of artificial stems of visca under paragraph 1518(a) of the Tariff Act of 1930, as modified, the wafer under the provision in paragraph 733 for, *inter alia,* biscuits and wafers. The importer there claimed that the combination of tree and wafer constituted an entirety dutiable under paragraph 1558 as a nonenumerated manufactured article. This court (one judge dissenting) held the miniature tree and wafers were entireties dutiable under paragraph 1558. The court of appeals reversed and stated its reasons as follows:

> The importer's case is built on the stipulations that the wafer and tree are affixed to one another when they are imported and that they remain so affixed when they are sold. The majority below seemed to think that this was determinative of the entireties issue. We do not agree. "The mere fact that * * * [the articles] may be bought, sold, and used together, in sets, does not require that they be regarded as entireties for tariff purposes." Lang Co. v. United States, 15 CCPA 341, 342, T.D. 42495 (1927).

> Mere juxtaposition at importation or in trade does not preclude further analysis. The difficulty is in the selection of appropriate standards for the analysis. It is suggested that the dispositive consideration is whether the identity of the individual compo-

nents has been submerged. However, it seems to us that where the design of the combination in issue by its very nature contemplates its disassembly and the utilization of the constituents in the very manner for which they are otherwise used and when articles very similar to those constituents are on sale as separate items, the combination is not, in the sense of the customs law, an entirety. To hold otherwise would only facilitate subversion of the congressional intent. The doctrine of entireties, as we have recently pointed out, may never be so used. Miniature Fashions, Inc. v. United States, 54 CCPA 11, C.A.D. 894. Cf. United States v. Schoverling, 146 U.S. 76 [13 S.Ct. 24, 36 L.Ed. 893] (1892). The cases relied upon below are not to the contrary. [54 CCPA at pages 110, 111.]

*Lafayette Radio, supra,* involved transistor radios classified as radio apparatus under paragraph 353 and leather cases separately classified as cases, wholly or in chief value of leather, dutiable under paragraph 1531 of the Tariff Act of 1930. Importer claimed that the leather case should be classified as an entirety with the radio, dutiable under paragraph 353. This court, following its earlier decision, Lafayette Electronics Mfg. Corp. v. United States, 57 Cust.Ct. 171, C.D. 2756 (1966), overruled the importer's claim on the ground that the leather cases were separate, distinct and complete articles apart from the radios, and not necessary for the radios to function properly. The court of appeals reversed this court on the facts which it summarized and discussed as follows:

> * * * Both models here in issue, the FS–91 and the FS–223, were imported and sold by appellant in a box which contained a radio, removable leather case, battery, and earphone. Normally none of these items was separately sold by appellant, but a customer who had purchased a radio with a case, and had lost or damaged the case, could replace the case by a spe-

cial order, which would be forwarded to the company's main office and there filled. The radios were never sold by appellant without a leather case. A case designed for one model was not interchangeable with the case for another model, since the cases were separately designed to fit the respective radio models and had die cuts positioned for the dials, knobs, antennas, etc., of the respective radio models. The radios could, of course, be operated outside the leather cases. The cases served to protect the radio cabinets, to lend portability to the radios, and to enhance their appearance and marketability.

\*   \*   \*   \*   \*   \*

We agree with the prior decision in *Lafayette Radio* to the extent that it holds that there are no ironclad rules or universally applicable principles for determining whether merchandise should be classified and dutied as entireties. As to the "fitted case" decisions of this court, relied upon by the Customs Court in the present case and in the earlier *Lafayette Radio* case, we find them distinguishable both in fact and in principle from the present case. United States v. Hensel [Bruckmann & Lorbacher, Inc.], 22 CCPA 281, T.D. 47330 (1934), involved fitted binocular cases. United States v. [E.] Leitz [Inc.], 22 CCPA 277, T.D. 47329 (1934) involved wood and paper cases for microscopes. In each instance this court held that the items should be dutied separately and not as entireties. The facts of both cases were similar to those of the present case to the extent that the binoculars and microscopes were always imported and sold together with their respective cases. However, we find a significant fact in the present case which was not present in either *Hensel* or *Leitz*, namely, that the radios here can function and are designed to function *in the cases*. This fact tends to show that the radio and the leather case function as a unit, and when this is added to the facts of importation and

sale as a unit, enhancement of appearance, and the functional contributions of protection and portability afforded by the case, we conclude that a proper showing has been made that the merchandise here should be treated as entireties. [Emphasis quoted.]

Our conclusion is not changed by the fact that the leather case is not necessary to the operation of the radio, although this fact is entitled to some weight. Radios frequently come equipped with parts which are not strictly necessary but which are integral with and enhance the commercial value of the unit. [57 CCPA at pages 64, 66.]

The problem of using the doctrine of entireties "as an aid to ascertain proper classification" of imported merchandise, *Miniature Fashions, supra,* is manifest in the lack of "ironclad rules or universally applicable principles for determining whether merchandise should be classified and dutied as entireties," *Lafayette Radio, supra.* Various criteria used in the past, as discussed in *Miniature Fashions, supra,* no longer completely resolve the problem of entireties when they "can lead to two contrary conclusions depending on what criteria are given controlling effect." The various criteria, as *Miniature Fashions, Altray* and *Lafayette Radio, supra,* assure, are important and must be weighed. However, as discussed by the court of appeals in the cited cases, we opine that the criteria are best approached and weighed looking at the problem from the standpoint of the commercial realities associated with the imported merchandise, provided that the intent of Congress is not thereby circumvented.

The testimony of defendant's witness, Mr. Snelwar, weighed with the exhibits, persuades us that the imported silver trays and glass dishes have no commercial value as separate articles except as they are joined as a unit. "The object of the duty laws is \* \* \* to class substances according to the general usage and known denominations of

trade." Two Hundred Chests of Tea, 22 U.S. 430, 438, 9 Wheat. 430, 438, 6 L.Ed. 128 (1824). We here emphasize that the disputed classification is as to the glass dishes, not the silver trays.

Exhibits can be potent witnesses. United States v. The Halle Bros., 20 CCPA 219, 221, T.D. 45995 (1932). As is most silver, the imported silver trays are attractive articles but standing alone, not impressively so. The dull finish of the shallow well of the trays makes obvious the fact that they are designed to hold a vessel of some sort. The dish imported with the silver trays is a bowl-shaped article, approximately 4½ inches in diameter and one inch in depth, the glass is clear, the design is starkly plain. The dish fits the well of the tray as designed and intended. Alone, except that it is concave, there is nothing about the dish to identify what it would be used for. Used in combination, the tray and dish enhance one another and form a harmonious attractive unit.

Mr. Snelwar corroborated plaintiff's testimony that the tray and dish are sold as a unit, never separately. If broken, the glass dish is replaced free of charge. Mr. Snelwar was of the opinion that the glass dishes had no commercial value as separate articles except that they might be sold at a closeout sale at a loss.

The glass dish, as defendant says, obviously has identity. It is a glass bowl or dish and could be used without the tray. But we do not think that identity alone should control classification of a glass dish which is shown to have no commercial or general acceptance as glassware, chiefly used in the household or elsewhere for serving food, independent of the silver tray with which imported. We would note that the shirts in *Miniature Fashions, supra,* were identifiably shirts for use as shirts, but were not generally accepted and sold as shirts independent of the matching shorts. The glass dish has commercial and general acceptance as a replacement article but that fact does not make out that it is not part of an imported unit. *Lafayette Radio, supra,* compare, John K. Kealy Co. et al. v. United States, 64 Cust.Ct. 62, C.D. 3959 (1970).

Customs, interestingly enough, classified the metal tray and glass dish as articles used in the household according to the respective materials of which made. The evidence here indicates that the metal tray and glass dish are bought and sold as a household item, and generally used in the household, only as a unit. We do not think that Congress intended to classify separately an article which, as generally accepted, has no viable separate identity except in combination with another article. The claim that the metal trays and glass dishes are dutiable as an entirety under TSUS item 653.80 is, therefore, sustained.

Judgment will be entered accordingly.